IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| ARTHUR DOE; BRENDA DOE; CAROL DOE; DIANA DOE; and ELIZABETH DOE | PLAINTIFFS |
| V. | CAUSE NO. 3:16-CV-00789-CWR-FKB |
| JIM HOOD; MARSHALL FISHER; CHARLIE HILL; COLONEL CHRIS GILLARD; and LT. COLONEL LARRY WAGGONER | DEFENDANTS |

## ORDER

In what follows, the Court considers plaintiffs' motion to proceed under pseudonyms. Plaintiffs have also requested to file under seal documentation revealing their identities. Defendants have responded in opposition to each request. After reviewing the briefing and applicable law, the Court is ready to rule.

I.  **Factual and Procedural History**

Pseudonymous plaintiffs A, B, C, D, and E Doe are residents of Mississippi. In this lawsuit they allege that they are required to register as sex offenders solely as a result of a prior conviction under Mississippi's "Unnatural Intercourse" statute or an equivalent out-of-state offense. The "Unnatural Intercourse" statute criminalizes, in relevant part, "the detestable and abominable crime against nature committed with mankind." Miss. Code Ann. § 97-29-59. The Mississippi Supreme Court has defined the statute to encompass the behavior of oral and anal sex, commonly referred to as "sodomy." *See*, *e.g.*, *Miller v. State*, 636 So. 2d 391 (Miss. 1994); *State v. Davis*, 79 So. 2d 452 (Miss. 1955). Plaintiffs assert that this conduct is protected by the Due Process Clause of the Fourteenth Amendment, and they should not be subjected to the cumbersome and stigmatizing requirements imposed by the Mississippi Sex Offender Registry

("MSOR"). Alternatively, they argue that their inclusion on the MSOR violates the Fourteenth Amendment's Equal Protection Clause.

In support of these allegations, plaintiffs have submitted a redacted attorney affidavit along with redacted MSOR reports revealing their true identities. Plaintiffs seek the Court's permission to file under seal full and complete copies of the affidavit and MSOR reports, so that they may establish standing. Assuming those un-redacted documents satisfy the requirements of standing, plaintiffs wish to prosecute this suit pseudonymously.

## II. Legal Standard

Litigating under pseudonyms "requires a balancing of considerations calling for maintenance of a party's privacy against the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981). The Fifth Circuit has identified three factors "common to those exceptional cases in which the need for party anonymity overwhelms the presumption of disclosure": (1) plaintiffs are "suing to challenge governmental activity; (2) prosecution of the suit compels plaintiffs to disclose information 'of the utmost intimacy;' and (3) plaintiffs [are] compelled to admit their intention to engage in illegal conduct, thereby risking criminal prosecution." *Id.* at 185 (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynn & Jaffe*, 599 F.2d 707 (5th Cir. 1979)).

These factors do not form a "rigid, three-step test for the propriety of party anonymity." *Id.* A party need not prove all three to proceed anonymously. *Doe v. El Paso Cty. Hosp. Dist.*, No. EP-13-CV-406-DCG, 2015 WL 1507840, at *2 (W.D. Tex. Apr. 1, 2015) (citing *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011) and *Stegall*, 653 F.2d at 186). Nor are the factors exclusive. The Fifth Circuit chose to "advance no hard and fast formula for ascertaining whether a party may sue anonymously." 653 F.2d at 186. Courts, therefore, have considered

other circumstances, including whether plaintiffs would face threats of "violence or physical harm by proceeding in their own names, and whether their anonymity posed a unique threat of fundamental unfairness to the defendant." *Plaintiff B*, 631 F.3d at 1316 (citing *Stegall*, 599 F.2d at 713).

A motion to file identifying documentation under seal must overcome the "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also United States v. Apothetech RX Specialty Pharm. Corp.*, No. 3:15-CV-588-CWR-FKB, 2017 WL 1100818, at *1 (S.D. Miss. Mar. 20, 2017) ("court records are presumptively in the public domain"). "However, the public's common law right is not absolute." *Sec. and Exch. Comm'n v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon*, 435 U.S. at 598). "In exercising its discretion, a district court must 'balance the public's common law right of access against the interests favoring nondisclosure.'" *Test Masters Educ. Serv., Inc. v. Robin Singh Educ. Serv., Inc.*, 799 F.3d 437, 454 (5th Cir. 2015) (quoting *Van Waeyenberghe*, 990 F.2d at 848).

### III. Discussion

#### A. Proceeding Under Pseudonyms

In this case, an application of the legal standard shows that plaintiffs should be allowed to proceed under pseudonyms.

First, plaintiffs challenge governmental action. In their motion for summary judgment, they ask this Court to adjudicate (1) whether enforcement of Mississippi's "Unnatural Intercourse" statute—by requiring plaintiffs to register as sex offenders—is invalid under *Lawrence v. Texas*, 539 U.S. 558 (2003)[1]; and (2) whether Mississippi's classification of out-of-

---

[1] In *Lawrence*, the Supreme Court held that a Texas statute criminalizing sodomy was unconstitutional as applied to "two adults who, with full and mutual consent from each other, engaged in sexual practices common to a

3

state offenses as statutorily equivalent to its "Unnatural Intercourse," law, thereby requiring registration as a sex offender, violates the Equal Protection Clause of the Fourteenth Amendment. Each request plainly challenges the constitutionality of state action, as applied to plaintiffs and the putative class they seek to represent. The public interest in this proceeding, then, pertains more to its outcome than to its individual participants. *See Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 190 (2d Cir. 2008) ("because of the purely legal nature of the issues presented . . . there is an atypically weak public interest in knowing the litigants' identities").

Second, this suit requires the disclosure of plaintiffs' private lives, including information of "the utmost intimacy." *SMU*, 599 F.2d at 713; *see also Doe v. Mall*, 829 F. Supp. 866, 868 n.2 (S.D. Miss. 1993) (allowing a plaintiff alleging rape as part of a premises liability claim to proceed under a pseudonym due to the "private nature of her allegations"). Here, plaintiffs are required to reveal information concerning private, consensual sexual conduct "common to a homosexual lifestyle." *Lawrence*, 539 U.S. at 579. The Fifth Circuit explicitly listed homosexuality among those "matters of a sensitive and highly personal nature . . . [when] the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." *SMU*, 599 F.2d at 713 (quotation marks and citation omitted); *see also Doe v. Griffon Mgmt. LLC*, No. 14-2626, 2014 WL 7040390, at *2 (E.D. La. Dec. 11, 2014) ("Examples of areas where courts have allowed pseudonyms include cases involving . . . homosexuality.").

Next, while plaintiffs do not intend to engage in illegal conduct, they have, "by filing suit, made revelations about their personal . . . practices that are shown to have invited an

---

homosexual lifestyle." 539 U.S. at 579. By contrast, conduct with minors or "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused" is not protected. *Id.*

4

opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 186. Gay and lesbian citizens have suffered through a well-documented history of condemnation and indignity. *See Windsor v. United States*, 699 F.3d 169, 182 (2d Cir. 2012) ("Perhaps the most telling proof of animus and discrimination against homosexuals in this country is that, for many years and in many states, homosexual conduct was criminal."); *see also Campaign for S. Equal. v. Bryant*, 64 F. Supp. 3d 906, 930-37 (S.D. Miss. 2014) (explaining that animus toward homosexual conduct prevailed in Western culture for the past seven centuries, and recounting various forms of discrimination and mistreatment of homosexuals throughout the United States, including Mississippi). Membership on a sex offender registry has also been shown to garner hatred and even deadly violence. *See Doe v. Jindal*, 851 F. Supp. 2d 995 (E.D. La. 2012) (allowing plaintiffs to use pseudonyms in an equal protection challenge to placement on sex offender registry); *Doe v. Harris*, 640 F.3d 972, 973 n.1 (9th Cir. 2011) (allowing plaintiff "to proceed under a pseudonym because drawing public attention to his status as a sex offender is precisely the consequence that he seeks to avoid by bringing this suit"); *see also* HUMAN RIGHTS WATCH, NO EASY ANSWERS: SEX OFFENDER LAWS IN THE U.S. (2007), https://www.hrw.org/reports/2007/us0907 ("Neighbors as well as strangers harass, intimidate and physically assault people who have committed sex offenses. At least four registered sex offenders have been killed."); Austin Baird, *Man Charged for Attacking Sex Offenders Greeted as a Hero by Some*, KTUU, Aug. 3, 2016, http://www.ktuu.com/content/news/Man-charged-for-attacking-sex-offenders-greeted-as-a-hero-by-some-389097252.html. Because these pleadings have the potential to invite ire in response to both homosexual conduct as well as plaintiffs' inclusion on Mississippi's sex offender registry, plaintiffs could reasonably expect "extensive harassment and perhaps even violent reprisals if their identities are disclosed." *Stegall*, 653 F.2d at 186.

Finally, non-disclosure of plaintiffs' identities does not materially disadvantage defendants. Challenges testing the "constitutional, statutory, or regulatory validity of governmental activity" often present questions of law, and "involve no injury to the Government's reputation." *SMU*, 599 F.2d at 713 (quotation marks omitted). The State will be able to defend its position—that at least some portion of Mississippi's Unnatural Intercourse statute was not invalidated by *Lawrence*, and that requiring sex offender registration for out-of-state equivalent offenses does not violate equal protection—without disclosing plaintiffs' names to the public.

### B. Sealing Attorney Affidavit and MSOR Reports

The above findings, particularly those concerning plaintiffs' safety, indicate that plaintiffs should be granted leeway to preserve their anonymity. It may be that the least restrictive means of preserving plaintiffs' anonymity is not through sealing, but allowing only attorneys-of-record to access plaintiffs' personally identifying information, i.e., "restricting" those items on the docket sheet. The parties shall consult with the Magistrate Judge concerning the specific means of preserving plaintiffs' anonymity.

## IV. Conclusion

Plaintiffs' motion is granted. None of plaintiffs' personally identifying information shall be made public on the Court's docket. Upon entry of an appropriate Protective Order, plaintiffs shall conventionally file, under restricted access, full and complete copies of the attorney affidavit and attached MSOR reports. Within 10 days of this Order, counsel shall contact the chambers of the Magistrate Judge for entry of the case management order.

**SO ORDERED**, this the 2nd day of June, 2017.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE