UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DOE,

    Plaintiff,

  v.

HOOD, *et al*,

    Defendants.

Case No. 3:16-cv-00789 (CWR) (FKB)

Oral Argument Requested

MEMORANDUM OF LAW IN REPLY TO
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th Floor
New York, NY 10012
(212) 614-6445

LAW OFFICE OF MATTHEW STRUGAR
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(323) 696-2299

LAW OFFICE OF ROBERT MCDUFF
767 North Congress Street
Jackson, MS 39202
(601) 969-0802

Attorneys for Plaintiff

TABLE OF CONTENTS

ARGUMENT ...................................................................................................................... 1

I.    The State's View that It Can Continue to Register Arthur Doe for a ▇-year-old
      Unnatural Intercourse Conviction Does Not Comport with *Lawrence*'s Clear
      Mandate Striking Down All Statutes Criminalizing Oral or Anal Sex ............................ 1

      A.    The setting of the conduct giving rise to Arthur Doe's conviction has no
            bearing on the validity of the Unnatural Intercourse statute or the
            registration requirement. .................................................................................... 1

      B.    Case Law Does Not Support Defendants' Reading of *Lawrence*. ............................ 4

      C.    There is no public safety or other rationale that justifies keeping Arthur Doe
            on the sex offender registry, where the lone trigger is a ▇-year-old
            conviction under a statute that has been held unlawful for 15 years ........................ 7

II.   The State's View of *Lawrence* Treats a Conviction for Consensual Conduct as a
      Conviction for Non-Consensual Conduct, Even Where the Plaintiff Never Had
      an Opportunity to Contest Unalleged and Unproven Facts ................................................ 8

III.  Defendants Articulate No Compelling Interest or Rational Basis for Classifying
      Unnatural Intercourse as Registrable When Prostitution Is Not ...................................... 10

CONCLUSION ................................................................................................................... 15

**TABLE OF AUTHORITIES**

**Cases**

*Bowers v. Hardwick*,
    478 U.S. 186 (1986)............................................................................. 2, 12

*City of Chicago v. Morales*,
    527 U.S. 41 (1999)................................................................................... 5

*City of Cleburne v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985)............................................................................... 10

*Edwards v. State*,
    594 So. 2d 587 (Miss. 1992)................................................................... 6

*Eisenstadt v. Baird*,
    405 U.S. 438 (1972)......................................................................10-11, 12

*Gilbert v. State*,
    220 So. 3d 1099 (Ala. Crim. App. 2016)............................................. 6, 7

*Hamilton v. Clarke*,
    No. 1:17-CV-245, 2017 WL 6757644 (E.D. Va. Dec. 29, 2017) ............... 5

*Heck v. Humphrey*,
    512 U.S. 477 (1994)............................................................................... 10

*John Corp. v. City of Houston*,
    214 F.3d 573 (5th Cir. 2000) ................................................................. 10

*Lawrence v. Texas*,
    539 U.S. 558 (2003)....................................................................... passim

MacDonald v. Moose,
    710 F.3d 154 (4th Cir. 2013) ............................................................... 4, 7

*Meza v. Livingston*,
    607 F.3d 392 (5th Cir. 2010) ................................................................. 8

*Murrell v. State*,
    655 So. 2d 881 (Miss. 1995)................................................................... 6

*Muth v. Frank*,
    412 F.3d 808 (7th Cir. 2005) ................................................................. 5

*People v. Groux*,
    No. F059366, 2011 Cal. App. Unpub. LEXIS 4817 (Cal. Ct. App. June 28, 2011)...................3

*Reining v. State*,
    606 So. 2d 1098 (Miss. 1992) ...................................................................6

*Skinner v. Oklahoma ex rel. Williamson*,
    316 U.S. 535 (1942)...................................................................10

*State v. Music*,
    No. 33285-3-III, 2016 Wash. App. LEXIS 862 (Wa. Ct. App. Apr. 28, 2016).........................5

*State v. Whiteley*,
    172 N.C. App. 772 (2005) ...................................................................5

*Stefanoff v. Hays Cnty., Tex.*,
    154 F.3d 523 (5th Cir. 1998) ...................................................................10

*Stoneburner v. Secretary of the Army*,
    152 F.3d 485 (5th Cir. 1998) ...................................................................10

*Toghill v. Clarke*,
    No. 7:15-CV-00119, 2016 WL 742123 (W.D. Va. Feb. 23, 2016) .........................4, 5

*Vacco v. Quill*,
    521 U.S. 793 (1997)...................................................................10

*Willson v. Buss*,
    370 F. Supp. 2d 782 (N.D. Ind. 2005) ...................................................................3

**Statutes**

La. R.S. § 14:89 ...................................................................14

Miss. Code Ann. § 45-33-23 ...................................................................11

Miss. Code Ann. § 45-33-25 ...................................................................9

Miss. Code Ann. § 97-3-65 ...................................................................6

Miss. Code Ann. § 97-3-67 ...................................................................6

Miss. Code Ann. § 97-3-71 ...................................................................6

Miss. Code Ann. § 97-3-95...................................................................6

Miss. Code Ann. § 97-29-49 ................................................................. 11, 12

Miss. Code Ann. § 97-29-59 ..................................................................... 13

Miss. Code Ann. § 99-7-2 ......................................................................... 6

Miss. Code Ann. § 99-39-3 ........................................................................ 9

Miss. Code Ann. § 99-39-5 ........................................................................ 9

1995 Miss. Gen. Laws, ch. 566, § 3 ............................................................ 9

2009 Miss. Gen. Laws, ch. 339, § 2 ............................................................ 9

**Other Authorities**

Chester James Antieau,
  THE ORIGINAL UNDERSTANDING OF THE FOURTEENTH AMENDMENT (1981) ........................... 13

Dale Carpenter, FLAGRANT CONDUCT: THE STORY OF LAWRENCE V. TEXAS 44 (2012) .................. 2

Melissa Farley, *Prostitution and Trafficking in Nine Countries* in PROSTITUTION,
TRAFFICKING, AND TRAUMATIC STRESS 33 (M. Farley, ed. 2003).......................... 13-14

Melissa Farley, *Prostitution, Trafficking and Cultural Amnesia: What We Must Not
Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 YALE
  JOURNAL OF LAW AND FEMINISM 109 (2006) ...................................................14

Louise Gerdes, *War and Terrorism Increase Prostitution* in PROSTITUTION AND SEX
  TRAFFICKING: OPPOSING VIEWPOINTS 142 (L. Gerdes, ed. 2006) ................................14

Nan D. Hunter, *Life After Hardwick*, 27 HARV. C.R.-C.L. L. REV. 531 (1992) ...........................12

**ARGUMENT**

I.   **The State's View that It Can Continue to Register Arthur Doe for a ▇-year-old Unnatural Intercourse Conviction Does Not Comport with *Lawrence*'s Clear Mandate Striking Down All Statutes Criminalizing Oral or Anal Sex.**

Defendants concede at the outset of their opposition brief that whether the sexual conduct that gave rise to Arthur Doe's Unnatural Intercourse conviction "was oral or anal, consensual or forcible is irrelevant and immaterial." Defs. Opp. Br. at 2. Plaintiff agrees. For the purpose of Arthur Doe's claims, the only relevant facts, all of which are undisputed, are that Arthur Doe was charged with Unnatural Intercourse, entered a plea, and, many years later, required to register as a sex offender—a requirement that has continued in force for more than a decade after the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003).

Defendants' argument that the Unnatural Intercourse statute remains enforceable as to Arthur Doe despite the clear language in *Lawrence* striking down sodomy statutes nationwide can be grouped into three prongs. First, Defendants argue that because Arthur Doe's conviction arose while ▇▇▇▇▇▇▇▇▇▇, he falls under a vague category that *Lawrence* purportedly exempted from its holding: cases in which "persons might be injured or coerced or situated in relationships in which consent might not easily be refused." Second, Defendants argue that the weight of post-*Lawrence* case law views the decision as applied in narrow circumstances. Third, Defendants point the court to "real-world consequences" should the statute be struck down and the state barred from enforcing it through the Mississippi Sex Offender Registration (MSOR) law. As Plaintiff discusses below, each of these arguments must be rejected.

A.   The setting of the conduct giving rise to Arthur Doe's conviction has no bearing on the validity of the Unnatural Intercourse statute or the registration requirement.

Defendants argue that *Lawrence* did nothing to disturb state statutes criminalizing oral and anal sex at all. Their reading of *Lawrence* – that it did not strike down such laws, but overturned

1

only their application to private, consensual, non-commercial behavior – leaves unexplained the purpose of the multiple references in Justice Kennedy's opinion to the "validity" of state sodomy statutes, see, e.g., 539 U.S. at 562, 575, and to the sweeping conclusion that *Lawrence* overruled *Bowers* and rendered statutes such as those in Georgia and Texas unconstitutional on their face. *See* Pl. Br. at 10-12 (ECF Nos. 98, 109). Further, *Lawrence* made clear that part of its decision to strike down such statutes stemmed from the devastating collateral consequences of sodomy *convictions*, including the requirement in Mississippi and three other states that those convicted of oral or anal sex register as sex offenders. 539 U.S. at 575. Yet Defendants argue that it is not convictions for sodomy that matter, but underlying nonconsensual conduct, even if never proven, or in the case of Arthur Doe, even if never charged.

Defendants rest their position on dicta in *Lawrence* noting that the "case" does not involve minors, prostitution, public conduct, force, or "relationships in which consent might not easily be refused." Defs. Opp. Br. at 16, quoting *Lawrence*, 539 U.S. at 578. But within the larger context of the decision, which focuses exclusively the validity of prohibitions of oral and anal sex, it is clear that the *Lawrence* "case" did not address the conduct of the two accused men, which is not discussed in any detail,[1] but rather the statute under which they were convicted. While some courts

---

[1]     Interestingly, Defendants' depiction of the *Lawrence* case bears little resemblance to the actual facts of the case. According to one history of the case, the day of the arrest, 55-year-old John Lawrence had hired his unemployed ex-partner Robert Eubanks and Eubanks' new, unemployed, 31-year-old boyfriend Tyron Garner, to do chores and run errands for him. Dale Carpenter, Flagrant Conduct: the Story of *Lawrence v. Texas* 44 (2012). At the end of the workday, Lawrence, Eubanks, Garner, and a fourth man all had drinks at Lawrence's apartment. *Id*. at 61-62. As Eubanks became intoxicated, he grew angry at Garner, left the apartment and called the police, falsely claiming that an unidentified man was brandishing a firearm in Lawrence's apartment and menacing the other tenants. *Id*. at 62-63. When the police arrived, they found the door open and the fourth man still inside with Lawrence and Garner. *Id*. at 65-67. In fact, Lawrence and Garner claimed until they died that they had never had sex with each other, and were sitting fifteen feet apart on separate couches when the police arrived. *Id*. at 70-74. The two police officers who arrived would later give different accounts of whether the men were

have debated whether this dicta somehow saves the statute from invalidation, the carve-out proposed by Defendants is so broad and vague that it would render *Lawrence*'s holding meaningless. *See* Pls. Opp. Br. at 22-23 (ECF Nos. 115, 129).

The way that Defendants apply this language to Arthur Doe's case demonstrates the unsupportable breadth and vagueness of this purported exception to *Lawrence*. Defendants state that because prison is an "inherently coercive environment," Defs. Opp. Br. at 16 — a phrase that does not occur in *Lawrence* — Arthur Doe's Unnatural Intercourse conviction, in retrospect, should be considered outside the reach of *Lawrence*. But Mississippi's Unnatural Intercourse statute has no element outlawing sexual conduct among inmates, and indeed, such a prohibition is found nowhere in the Mississippi criminal code. In contrast, *People v. Groux*, No. F059366, 2011 Cal. App. Unpub. LEXIS 4817, 2011 Cal. App. Unpub. LEXIS 4817 (Cal. Ct. App. June 28, 2011) the unpublished California Court of Appeal decision on which Defendants rely, Defs. Opp. Br. at 2, addresses a law barring oral and anal sex among inmates, not a statute criminalizing oral and anal sex with no additional element.

Confronted with a material hole in their argument, Defendants turn to a First Amendment case in another state in which a federal district court noted that privacy rights may be curtailed in prison. *Willson v. Buss*, 370 F. Supp. 2d 782, 786 (N.D. Ind. 2005). *See* Defs. Opp. Br. at 15. But *Willson* did not deal with due process or the validity of sodomy statutes at all; instead, it is a First Amendment case in which the court let stand a prison regulation prohibiting the distribution of materials containing "nude or seminude photographs and blatant homosexual materials." *Id*. Such

---

engaged in oral or anal sex. *Id*. at 68-69. Regardless, the supposed "privacy" aspect of *Lawrence* that the State repeatedly emphasizes is undercut by the presence of the fourth man (and Eubanks) as well as the open front door. And, because Lawrence was 24 years Garner's senior and his part-time employer, under Defendants' reading, even their relationship could easily be categorized as a situation where "consent might not easily be refused."

a ruling has no bearing on whether *Lawrence* renders Mississippi's Unnatural Intercourse statute and registration requirement invalid.

There is simply no language in case law or in the Mississippi criminal code for Defendants' position that a conviction for sodomy falls outside of *Lawrence* if the conduct occurred among inmates. Defendants may not treat Arthur Doe's conviction for Unnatural Intercourse as a conviction for a different crime that does not even exist under Mississippi law.

B.   Case Law Does Not Support Defendants' Reading of *Lawrence.*

As Plaintiff has argued, in *MacDonald v. Moose*, 710 F.3d 154 (4th Cir. 2013), *cert denied* 134 S. Ct. 200 (2013), the only circuit court of appeals to directly address the facial validity of sodomy statutes post-*Lawrence* held that the Virginia prohibition on oral and anal sex was "unconstitutional when applied to any person." 710 F.3d at 162. *See* Pls. MSJ Br. at 8. The Fourth Circuit so found even though the offender had been found guilty of sodomy with a minor. Calling *MacDonald* an "outlier," Defs. Opp. Br. at 8, Defendants set forth a long list of cases in which state and federal courts have purportedly read *Lawrence* to apply to narrowly to private, consensual, adult, non-commercial conduct rather than to oral and anal prohibitions on their face. These cases, many of which cite *Lawrence* but do not challenge statutes whose only elements are oral or anal sex, are either distinguishable, irrelevant, or wrong.

In *Toghill v. Clarke*, the defendant in Virginia was convicted *not* under the provision of the sodomy statute barring oral and anal sex on its own, but under "an entirely different statute dealing expressly with children." *Toghill v. Clarke*, No. 7:15-CV-00119, 2016 WL 742123, at *7 (W.D. Va. Feb. 23, 2016), *reconsideration denied*, No. 7:15-CV-00119, 2016 WL 10957247 (W.D. Va. Mar. 28, 2016), and *aff'd*, 877 F.3d 547 (4th Cir. 2017). "The Supreme Court of the United States excluded *Lawrence* from being the deciding authority for sodomy *statutes* involving minors,

coercion, prostitution, or public conduct." *Id* at *6. (emphasis added). Similarly, in *Muth v. Frank*, 412 F.3d 808 (7th Cir. 2005), the habeas petitioner was convicted under an incest statute, not a sodomy statute. The Seventh Circuit directly noted that "*Lawrence* held that a state cannot enact *laws* that criminalize homosexual sodomy." *Id*. at 817.

In other cases, courts have permitted a sodomy statute to stand where the state's highest court has limited its application. For example, in *Hamilton v. Clarke*, where a defendant was convicted of multiple sexual offenses involving children, a conviction for sodomy was not void under *Lawrence* "because the Supreme Court of Virginia had narrowed the construction of the sodomy statute in *Toghill*, a decision which directly applied to the facts of Hamilton's case." *Hamilton v. Clarke*, No. 1:17-CV-245, 2017 WL 6757644, at *5 (E.D. Va. Dec. 29, 2017). Similarly, in *State v. Whiteley*, the appellate court in North Carolina vacated a conviction for crime against nature, holding that in order for the application of oral sex prohibition to be "constitutional post-*Lawrence* on the facts of this case, the State must prove beyond a reasonable doubt that defendant committed the sexual act, cunnilingus, *and* that such an act was non-consensual." 172 N.C. App. 772, 779, 616 S.E.2d 576, 581 (2005) (emphasis added). But in Mississippi, the state courts have made no such limitations on the Unnatural Intercourse statute, and federal courts "have no authority to construe the language of a state statute more narrowly than the construction given by that State's highest court." *City of Chicago v. Morales*, 527 U.S. 41, 61 (1999). Defendants' citation to *State v. Music*, No. 33285-3-III, 2016 Wash. App. LEXIS 862 (Wa. Ct. App. Apr. 28, 2016), in which the petitioner attempted to overturn his decades-old sodomy conviction based on

*Lawrence*, is likewise unavailing. As Plaintiff has argued, Pl. Opp. Br. at 17, unlike in *Music*, Mississippi could have prosecuted Arthur Doe under an alternative statute, but chose not to.[2]

Finally, Defendants point to *Gilbert v. State*, addressing a defendant's conviction for "deviate sexual intercourse" under a "sexual misconduct" statute prohibiting oral and anal sex and specifying that "consent is no defense." 220 So. 3d 1099, 1105 (Ala. Crim. App. 2016), *reh'g denied* (May 27, 2016), *cert. denied* (Oct. 14, 2016), quoting Ala. Code. Sec. 13A-6-65(a)(3) (Ala. 1975). Gilbert had entered his plea on the condition that he be permitted to challenge the relevant portion of the sexual misconduct statute under *Lawrence*. *Id*. at 1100. The Alabama Court of Criminal Appeals held that while the trial court had convicted the defendant only of "deviate sexual intercourse," it was the defendant's responsibility to prove that he had engaged in consensual sex. *Id*. at 1005. This ruling, the only one cited by Defendants with facts directly parallel to Arthur Doe's, is wrong. It is the state that must prove every element of a crime, not the defendant who must demonstrate that he is innocent to evade conviction. (*See* Part II *infra*). Even if *Gilbert* were right, such a requirement would only make sense for those who were charged and convicted post-

---

[2]    Plaintiff's brief cites *Edwards v. State*, 594 So. 2d 587, 587 (Miss. 1992), as support for the notion that "sexual battery under Miss. Code Ann. §§ 97-3-95 & 99-7-2 (1972)" could be charged for male-on-male anal and oral rape. Pls. Opp. Br. at 17-18. To the extent this implied that sexual battery was available as a charge for male-on-male rape in 1978, when Arthur Doe was charged with Unnatural Intercourse, this was in error. The quotation's reference to "(1972)" is to the date of the general recompilation of the Mississippi code, but the sexual battery statute (Miss. Code § 97-3-95) in effect at the time of the offenses in *Edwards* was created in 1980. *Cf.* Gov't MSJ Opp. at 13 n.3. As of 1978 the general rape, statutory rape and ravishment criminal statutes all still required that the victim be female. *See* Miss. Code § 97-3-65 (1977); § 97-3-67 (1972); § 97-3-71 (1972). However, simple and aggravated assault under Miss. Code. § 97–3–7 would have been available as a charge in instances where the rape victim was male. A male-on-male anal rapist could have been convicted of assault, so long as "physical injury," interpreted by the Mississippi Supreme Court to mean any "physical pain," occurred. *See Murrell v. State*, 655 So. 2d 881, 884–85 (Miss. 1995); *see also Reining v. State*, 606 So. 2d 1098, 1103 (Miss. 1992) ("a minor injury is a 'bodily injury' even though it may not be a traumatic injury.").

*Lawrence*. It makes no sense where, as here, a conviction pre-dates *Lawrence*, where the opportunity that *Gilbert* envisions to prove consent did not even exist.

In short, there is no convincing or persuasive authority to undermine the conclusion of *MacDonald v. Moose*: the state cannot enforce sodomy statutes whose only elements are oral or anal sex. 710 F.3d at 162. Mississippi's Unnatural Intercourse statute was rendered invalid by *Lawrence*, and it cannot be enforced through the Sex Offender Registration statute.

    C. <u>There is no public safety or other rationale that justifies keeping Arthur Doe on the sex offender registry, where the lone trigger is a ██-year-old conviction under a statute that has been held unlawful for 15 years.</u>

In a final attempt to salvage the statute under *Lawrence*, Defendants discuss the crimes committed by individuals who, like Arthur Doe, are required to register as a result of Unnatural Intercourse convictions. The implication, never articulated directly, is that declaring the Unnatural Intercourse statute invalid and unenforceable would have a negative impact on public safety. But the seriousness of the underlying conduct for which some of these individuals was convicted does not justify the continued enforcement of an unconstitutional statute through sex offender registration. And Mississippi has never studied, much less articulated, how registration protects public safety. SUMF ¶ 42. Registration is not required of those convicted of murder or assault, or even of those charged with sex offenses who have agreed to plead to non-registrable offenses. *See* Report of Robert Rudder (ECF No. 99-1). Defendants have provided no factual support for their suggestion that the public will be imperiled should a small number of registrants be permitted to seek removal from the registry if the Unnatural Intercourse statute is declared invalid and its enforcement through the MSOR law barred.

In any case, in the ████ years since his conviction for Unnatural Intercourse at the age of ██, Arthur Doe has not been charged with, much less convicted of, a sex offense. He encounters

humiliation as a result of the sex offender registration requirements that were first imposed on him more than thirty years after his conviction. Defendants have never alleged that there is any public safety benefit to keeping him on the registry, because there is not.  The crimes of other registrants cannot justify using Arthur Doe's ███-year-old Unnatural Intercourse plea to require him to register in violation of *Lawrence*.

## II.   The State's View of *Lawrence* Treats a Conviction for Consensual Conduct as a Conviction for Non-Consensual Conduct, Even Where the Plaintiff Never Had an Opportunity to Contest Unalleged and Unproven Facts.

The absurdity of the state's reading of *Lawrence* is demonstrated by its procedural due process consequences. *See* Pl. MSJ 21-24; Pl. MSJ Opp. 37-40. Arthur Doe was charged with "unnatural intercourse"—not with unnatural intercourse in public, unnatural intercourse for commercial purposes, unnatural intercourse with a minor, nor unnatural intercourse without consent. He "neither stipulated nor judicially admitted" that any such element was present. *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010). Mississippi does not prohibit sexual conduct among inmates. *See* I(A) *supra*. Any other unsourced hearsay that the state claims can salvage his registration requirement were never an element of his charges, not agreed to with his guilty plea, and obviously never proven beyond a reasonable doubt. *See* Pl. Opp. Br. at 39.

The state's only reply is to reverse the burden, claiming that Mr. Doe should now, ██ years after the fact, have to prove—to what standard of proof, it does not say—that his offense was consensual. Defs. Opp. Br. at 24. The state never details how this would be proven in practice, instead arguing that Doe "failed to utilize the due process procedure available to him under state law" for doing so because he "could have filed a motion for post-conviction relief" under Mississippi's Uniform Post-Conviction Collateral Relief Act (UPCCRA). *Id.* at 25.

The provision of the current code the state believes Mr. Doe should have invoked, Miss. Code § 99-39-5(1), was added to the UPCCRA in 2009 and permitted, for the first time,[3] a person not in custody to seek collateral post-conviction relief. It extends the right to seek review to a person "subject to sex offender registration for the period of the registration or for the first five (5) years of the registration, whichever is the shorter period." Someone in Doe's circumstance, then, would be entitled to challenge the conviction underlying his registration requirement *only for the first five years* that that requirement applied.

After some time living out of state, Mr. Doe ███████████████████████████ ████████████████████████████████████████████. Under the 2003 version of the registration requirement, mere presence in state for more than 14 days aggregate in any calendar year would have triggered his sex offender registration requirement under then-Miss. Code § 45-33-25 (2003), and the first five years of his registration requirement would have expired by ████████████ at latest, well before the March 16, 2009 passage of the provision of the UPCCRA revision that first allowed anyone no longer in custody to challenge a conviction that forced them to register. *See* 2009 Miss. Gen. Laws, ch. 339, § 2, 2009 Miss. S.B. 2709 (approved by the governor on Mar. 16, 2009). Appropriately, then, the State's Catch-22 has its own Catch-22: Doe never qualified as part of the narrowly-defined group of sex registrants permitted to bring

---

[3]     *See* 2009 Miss. Gen. Laws, ch. 339, § 2, 2009 Miss. S.B. 2709 (Mar. 16, 2009). The prior version extended the right to relief to only "[a]ny prisoner in custody under sentence of a court of record of the State of Mississippi" (1995 Miss. Gen. Laws, ch. 566, § 3 (Jul. 1, 1995), in other words, individuals traditionally able to bring a habeas petition. *Cf.* Pl. MSJ at 40-41 (habeas jurisdiction turns on custody, and noting all federal courts of appeals to consider issue have decided that ongoing registration requirement does not constitute "custody").

Note that the UPCCRA itself was intended to "streamline" *all* forms of state post-conviction collateral review, replacing vehicles such as common law habeas corpus or coram nobis with its "exclusive and uniform procedure." *See* Miss. Code § 99-39-3 (unchanged since 1984).

post-custodial collateral challenges to their sex offense convictions by the 2009 revisions to the UPCCRA.[4]

### III.    Defendants Articulate No Compelling Interest or Rational Basis for Classifying Unnatural Intercourse as Registrable When Prostitution Is Not.

Defendants appear to claim that because Arthur Doe could not have been charged with Prostitution, he cannot raise an equal protection clause to the differential treatment between people convicted of Unnatural Intercourse and Prostitution. This argument defies logic and ignores precedent. Equal Protection mandates that like cases must be treated alike. *See e.g.*, *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *Vacco v. Quill*, 521 U.S. 793, 799 (1997); *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000); *Stefanoff v. Hays Cnty., Tex.*, 154 F.3d 523, 525-26 (5th Cir. 1998); *Stoneburner v. Secretary of the Army*, 152 F.3d 485, 491 (5th Cir. 1998). "When the law lays an unequal hand on those who have committed intrinsically the same quality of offense . . . it has made as an invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment. . . . The equal protection clause would . . . be a formula of empty words if such conspicuously artificial lines could be drawn." *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541-42 (1942).

Because the essence of an Equal Protection violation is an irrational distinction among classes of people, the people who are on the losing end of the irrational classification will—*by definition*—not be part of the class of people who benefit from the classification. For example, in *Eisenstadt v. Baird*, 405 U.S. 438, 447 (1972), the Court found that a Massachusetts law that prohibited unmarried couples from obtaining contraception while allowing married couple to

---

[4]      For the same reason the UPCCRA has no impact on the application of *Heck v. Humphrey*, 512 U.S. 477 (1994), to this case. *See* Pl. Opp. Br. at 40-44.

obtain it violated the Equal Protection rights of the unmarried couples. *Id.* at 453. By definition the state could not have treated the unmarried couples as married couples.

If, for example, Massachusetts had made it a felony for unmarried couples to obtain contraception but only a misdemeanor for married couples to obtain it, the result would have been the same. The law would have treated the same activity differently for different classes of people without a rational basis. But Defendants would have it that the felonious unmarried couple would be unable to bring their Equal Protection Clause challenge because Massachusetts could not have charged them with the misdemeanor provision (as they were, in fact, unmarried). Contrary to Defendants' argument, it does not matter whether Arthur Doe *could* have been charged with Prostitution—his argument is that he is in the disadvantaged class of people who were charged with Unnatural Intercourse and therefor required to register with the MSOR while those beneficially convicted of the same act under the Prostitution statute avoid registration. It is enough that Arthur Doe is in the disadvantaged class to assert that registration for his crime is irrational in violation of the Equal Protection Clause when the same conduct does not trigger registration for those class of people charged with Prostitution.

As Plaintiff demonstrated in his opening brief, the Prostitution statute, Miss. Code Ann. § 97-29-49, bars the exact same activity (oral or anal sex) as the Unnatural Intercourse statute, with the only distinction being that Prostitution has an additional element of a monetary exchange. Pls. MSJ Br. at 25-26. Yet the State does not require registration for Prostitution convictions, but does for Unnatural Intercourse convictions. *See* Miss. Code Ann. § 45-33-23(h)(i-xxiv).

Why would Unnatural Intercourse require registration when Prostitution covers the same ground *plus* a monetary exchange? Because homosexuality was long considered immoral, while prostitution was traditionally procured by straight men—immoral enough to be prohibited, but

never viewed with the moral opprobrium reserved for homosexuality.[5] This context explains not only to irrational distinction in registration requirements, but also the *twenty-fold* disparity in incarceration available for commission to the two crimes. *Compare* Miss. Code Ann. § 97-29-49(2) (up to six months for a Prostitution conviction) and Miss. Code Ann. § 97-29-59 (up to ten years for an Unnatural Intercourse conviction).

As the Supreme Court held in *Eisenstadt*, "nothing opens the door to arbitrary action so effectively as to allow [government] officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation." 405 U.S. at 454. The differential registration requirements afforded to those who sell oral or anal sex, as opposed to those who merely engage in it, constitutes exactly this kind of irrational legislative gerrymandering that seeks to escape the

---

[5] Defendants' insistence that the Unnatural Intercourse statute and its attendant registration requirement are "not about homosexuality," Defs. Opp. Br. at 19, also reflects a purposefully ahistorical perspective. As legal scholars have noted, "sodomy statutes are socially understood as 'homosexual laws,' even if in fact or in origin" they apply to heterosexual conduct. Nan D. Hunter, *Life After Hardwick*, 27 Harv. C.R.-C.L. L. Rev. 531, 542 n.48 (1992). Perhaps the clearest articulation of this fact comes from *Bowers v. Hardwick*, where the Supreme Court described the Georgia law at issue as solely a prohibition on "homosexual sodomy" despite that statute technically being gender-neutral. 478 U.S. 186, 188 n.2 (1986); *see also* Brief of Professors of History George Chauncey, Nancy F. Cotte, et al., as Amici Curiae Supporting Petitioners in *Lawrence v. Texas*, 2003 WL 15235 at *3 (2003) (sodomy laws "reflect [an] historically unprecedented concern to classify and penalize homosexuals as a subordinate class of citizens"). Defendants' attempt to distinguish Mississippi's Unnatural Intercourse statute from other state laws that are limited to same-sex conduct, Defs. Opp. Br. at 19, is undermined by the fact the State considers convictions from those states to be the equivalent of an Unnatural Intercourse statute and requires registration for people which such convictions. As Justice O'Connor's concurring opinion in *Lawrence* recognized, because Texas' sodomy law "conduct that [was] closely correlated with being homosexual . . . . . it [was] directed toward gay persons as a class." 539 U.S. at 583 (O'Connor, J., concurring). Whether considering Mississippi's law or another state's law that Mississippi enforced through its registration scheme, the operation of those laws has "converted sodomy into a code word for homosexuality, regardless of the statutory definition." Hunter, 27 Harv. C.R.-C.L. L. Rev. at 542.

political retribution that might befall a legislator who sought to make Prostitution a registerable offense.

Defendants' argument is also in conflict with the original purpose of the Fourteenth Amendment. The original intent of the Equal Protection Clause was to eliminate statutes that punished identical crimes committed against African-Americans and whites differently. *See, e.g.*, Chester James Antieau, THE ORIGINAL UNDERSTANDING OF THE FOURTEENTH AMENDMENT (1981) 21-23. On its own logic, Defendants' argument would prohibit a challenge to such laws because someone convicted under one could not have been convicted under the other, solely on account of the race of the victim.

Defendants also try to wave away this irrational classification by claiming that Prostitution contains an intrinsic aspect of consent. Defs. Opp. Br. at 17. The statutes, the research, and Defendants' own actions demonstrate that they are wrong.

First, as Plaintiff has repeatedly asserted throughout this litigation, the Unnatural Intercourse statute criminalizes consensual sex—the *only* element of the crime is engaging in oral or anal sex. Miss. Code. Ann. § 97-29-59.

Second, the Prostitution statute also does not require consent—the State's reading of an intrinsic consent in the Prostitution statute is simply invented. Defendants' assertion that Prostitution intrinsically requires the consent of the person selling sex is willfully blind of the majority of social science research on prostitution—and even modern laypeople's conception of industry. In interviews conducted with 854 prostituted women in nine countries, 89% said they would like to escape prostitution immediately but did not have other options for survival.  Melissa Farley, *Prostitution and Trafficking in Nine Countries* in PROSTITUTION, TRAFFICKING, AND TRAUMATIC STRESS 33 (M. Farley, ed. 2003); *see also* Louise Gerdes, *War and Terrorism Increase*

*Prostitution* in PROSTITUTION AND SEX TRAFFICKING: OPPOSING VIEWPOINTS 142 (L. Gerdes, ed. 2006) (various surveys reveal more than 90% of women in prostitution wish to leave but lack viable options). As one survivor of prostitution summarized it, prostitution is often "the choice made by those who have no choice." Melissa Farley, *Prostitution, Trafficking and Cultural Amnesia: What We Must Not Know in Order to Keep the Business of Sexual Exploitation Running Smoothly*, 18 YALE JOURNAL OF LAW AND FEMINISM 109, 110 (2006).

Third, Defendants' argument is further given lie to by *their own actions*. Until last month, Mississippi required individual convicted under Louisiana's Crimes Against Nature by Solicitation (CANS) statute, La. R.S. §14:89(A)(2) or La. R.S. §14:89.2(A), to register under the MSOR on the theory that their crimes were the equivalent to a violation of Mississippi's Unnatural Intercourse statute. The CANS statute is a prostitution statute—just one that applies only to prostitution for oral or anal sex. Only after litigating this case for a more than a year and as part of a settlement with four Plaintiffs in this case did Mississippi agree to remove people with CANS convictions from the MSOR. If Defendants believed their own argument that Prostitution necessarily involves consent while Unnatural Intercourse implicitly lacks it, they would have never required registration for CANS convictions in the first place.

Because Mississippi has classified people convicted under the Unnatural Intercourse statute as sex offenders, and exempted people convicted of the same conduct (plus an additional element) under the Prostitution statute, without any rational relation to a legitimate governmental end, the State is violating the Equal Protection Clause.

Should the Court wish to avoid ruling on the scope of *Lawrence* on Plaintiff's Substantive Due Process claim, the Equal Protection Clause claim presents a narrower ground to afford Plaintiff relief.

## CONCLUSION

Defendants have violated Plaintiff's rights to due process and equal protection by requiring him to register as a sex offender for a conviction under an unconstitutional statute. Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Summary Judgment, order Defendants to cease requiring him to register on the MSOR, declare the "crime against nature with mankind" portion of the Unnatural Intercourse statute and its enforcement through the MSOR unconstitutional, and order all just and necessary relief as set forth in Plaintiff's Prayer for Relief.

Respectfully submitted this 15th day of June, 2018,

CENTER FOR CONSTITUTIONAL RIGHTS

By: /s/ Ghita Schwarz
   Ghita Schwarz
    *pro hac vice*
   Shayana Kadidal
    *pro hac vice*
   Stephanie Llanes
    *pro hac vice*
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6445
Fax: (212) 614-6499
gschwarz@ccrjustice.org
sllanes@ccrjustice.org
shanek@ccrjustice.org

LAW OFFICE OF ROBERT MCDUFF

By: /s/ Robert B. McDuff
   Robert B. McDuff
    Bar No. 2532
   Jacob W. Howard
    Bar No. 103256
767 North Congress Street
Jackson, Mississippi 39202
Tel:(601) 969-0802
Fax: (601) 969-0804
rbm@mcdufflaw.com
jake@mcdufflaw.com

LAW OFFICE OF MATTHEW STRUGAR

By: /s/ Matthew Strugar
   Matthew Strugar
    *pro hac vice*
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
Tel: (323) 696-2299
matthew@matthewstrugar.com

15

## CERTIFICATE OF SERVICE

This is to certify that on this day I, Matthew Strugar, Counsel for Plaintiffs, electronically filed the foregoing document with the Clerk of the Court using the ECF system which sent notice of such filing to the following:

PAUL E. BARNES, MSB No. 99107
Special Assistant Attorney General
State of Mississippi
Office of the Attorney General
Post Office Box 220
Jackson, MS 39205
pbarn@ago.state.ms.us

WILSON MINOR, MSB No. 102663
Special Assistant Attorney General
State of Mississippi
Office of the Attorney General
Post Office Box 220
Jackson, MS 39205
wmino@ago.state.ms.us

ATTORNEYS FOR DEFENDANTS

THIS, the 15th day of June 2018.

/s/Matthew Strugar_____
MATTHEW STRUGAR