**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**ARTHUR DOE; BRENDA DOE; CAROL DOE;**        **PLAINTIFFS**
**DIANA DOE; and ELIZABETH DOE**

**V.**        **CAUSE NO. 3:16-CV-789-CWR-FKB**

**JIM HOOD; MARSHALL FISHER;**        **DEFENDANTS**
**CHARLIE HILL; COLONEL CHRIS
GILLARD; and LT. COLONEL LARRY
WAGGONER**

## <u>ORDER</u>

In 1978, Arthur Doe[1] pleaded guilty to violating Mississippi's "Unnatural Intercourse" law. Miss. Code Ann. § 97-29-59. The statute prohibits oral and anal sex, or what is also known as sodomy. As a result of his conviction, Doe was later required to register as a sex offender.

In *Lawrence v. Texas*, 539 U.S. 558 (2003), the Supreme Court held that a Texas statute, criminalizing same-sex sodomy, violated the Due Process Clause of the Fourteenth Amendment. That decision overruled *Bowers v. Hardwick*, 478 U.S. 186 (1986), in which the Supreme Court had upheld the constitutionality of a Georgia statute that criminalized sodomy.

Fifteen years later, Mississippi continues to enforce its pre-*Lawrence* prohibition on "unnatural intercourse." Mississippi requires persons convicted under the statute, or an equivalent out-of-state offense, to register with the Mississippi Sex Offender Registry (MSOR).

Doe asserts that the anti-sodomy law is unconstitutional on its face and as applied to him under the Due Process Clause of the Fourteenth Amendment. Alternatively, he argues that his inclusion on the MSOR violates the Equal Protection Clause. Mississippi responds that

---

[1] The Court granted Plaintiffs' Motion to Proceed Under Pseudonyms. *See* June 2, 2017 Order.

*Lawrence* does not protect non-consensual acts of sodomy, and that it may enforce its sodomy prohibition when applied to such conduct, as in Doe's case.

The Court agrees with Doe that the statute appears to be unconstitutional. He should not be subjected to the stigmatizing requirements imposed by the MSOR. As discussed below, though, this Court may not be the appropriate forum for Doe to seek relief at this time. A hearing is necessary to determine whether Doe must first seek relief in state court.

## I.      Background

### A.      Procedural History

On October 17, 2016, five Mississippians filed this putative class action pursuant to 42 U.S.C. § 1983. Plaintiffs challenged the constitutionality of Mississippi's Unnatural Intercourse law, as well as their inclusion on the MSOR. They sought declaratory and injunctive relief.

Arthur Doe is a Mississippi resident convicted under Mississippi's Unnatural Intercourse statute. Brenda Doe, Carol Doe, Diana Doe, and Elizabeth Doe are Mississippi residents convicted of Louisiana's Crime Against Nature by Solicitation (CANS) law. Because of these offenses, the State required Plaintiffs to register with the Mississippi Department of Public Safety as sex offenders.

Defendants are five state officials responsible for enforcing Mississippi's sodomy prohibition or the MSOR: Jim Hood, the Attorney General of the State of Mississippi; Marshall Fisher, the Commissioner of the Department of Public Safety; Charlie Hill, Director of the Department of Public Safety Sex Offender Registry; Colonel Chris Gillard, the Chief of the Mississippi Highway Patrol; and Lieutenant Colonel Larry Waggoner, the Director of the Mississippi Bureau of Investigation.

A month after filing their Complaint, Plaintiffs moved for summary judgment and moved to certify a class. This Court denied both motions, and granted Defendants' request to take discovery relating to class certification issues.[2] Plaintiffs have since abandoned their claim for class certification.

Over the next year, the parties worked to resolve the claims of the "CANS Plaintiffs," individuals who were convicted under the Louisiana anti-sodomy law and required to register as sex offenders in Mississippi. A Louisiana district judge had ordered that Louisiana remove CANS offenders from its own sex offender registry. *See Doe v. Jindal*, 851 F. Supp. 2d 995, 1009 (E.D. La. 2012) (granting summary judgment to individuals with CANS convictions because they were deprived of equal protection in violation of the Fourteenth Amendment). On May 10, 2018, the parties reached an agreed resolution removing the CANS Plaintiffs, and any other individuals on the MSOR because of CANS convictions, from the MSOR. *See* May 10, 2018 Order.

Now one plaintiff, Arthur Doe, remains. He brings two claims. First, he asserts facial and as-applied due process challenges to the anti-sodomy law. In the alternative, he argues that his classification as a sex offender violates the Equal Protection Clause. The Court takes up his claims on the parties' Cross-Motions for Summary Judgment.[3]

---

[2] The State sought discovery to determine which plaintiffs or other putative class members are on Mississippi's Sex Offender Registry "solely for conduct recognized as constitutionally protected by *Lawrence v. Texas.*" *See* June 2, 2017 Order.

[3] The Court denies Defendants' Motion to Exclude the Opinions of Plaintiffs' Expert Robert Rudder. Rudder, the current training director at the Mississippi Office of State Public Defender, testifies that his office trains public defenders to avoid having their clients register as sex offenders through the plea bargaining process. Defendants argue that Rudder's testimony is not relevant or helpful. The Court disagrees. *See Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007); *infra* note 22.

## B.     Mississippi Law

Doe seeks to enjoin the State from enforcing its sodomy prohibition, Mississippi Code

§ 97-29-59, and to remove the statute as an offense subject to the MSOR under § 45-33-

47(2)(c)(i)(2).

### 1.     "Unnatural Intercourse" Statute

From 1962 to 2003, sodomy decriminalization proceeded rapidly.[4] Twenty-six states and

the District of Columbia repealed their anti-sodomy laws, and state courts struck down an

additional 10 state laws. When *Lawrence* arrived at the Supreme Court, only 13 states—

including Mississippi—still had sodomy prohibitions on the books.[5] In the wake of the decision,

state legislatures in Missouri and Kansas amended or repealed their laws,[6] and the Fourth Circuit

invalidated Virginia's sodomy prohibition. *MacDonald v. Moose*, 710 F.3d 154 (4th Cir. 2013).

Mississippi is among those states that still criminalizes consensual anal and oral sex. The

state prohibition has existed in some form for over 200 hundred years. In 1802, Mississippi first

recognized sodomy as a common law crime, and in 1839, the state legislature codified the

prohibition.[7] Over a century later, Mississippi recodified the law under a new title, "Unnatural

Intercourse." The current statute prohibits, in pertinent part, "the detestable and abominable

crime against nature committed with mankind."[8] Miss. Code Ann. § 97-29-59. Those convicted

of the offense face up to 10 years' imprisonment. *Id*.

The Mississippi Supreme Court has defined the statute to encompass an act of sodomy,

*i.e.*, anal or oral sex. *See, e.g., Miller v. State*, 636 So. 2d 391 (Miss. 1994); *State v. Mays*, 329

---

[4] William N. Eskridge Jr., DISHONORABLE PASSIONS: SODOMY LAWS IN AMERICA, 1861-2003 177 (2008).
[5] Justin Reinheimer, *What Lawrence Should Have Said: Reconstructing an Equality Approach*, 96 CALIF. L. REV. 505, 510 (2008).
[6] *See* Mo. Rev. Stat. § 566.062 (amended 2006); Kan. Stat. Ann. § 21-3505 (repealed 2011).
[7] Eskridge, *supra* note 4, at 396.
[8] The law also prohibits sodomy acts "with a beast." This suit focuses solely on acts "committed with mankind."

So. 2d 65 (Miss. 1976). These decisions have made clear that a prosecutor need only prove a single element—that the defendant engaged in anal or oral sex. The prosecutor does not have to prove that the sex was non-consensual. In other words, the statute criminalizes consensual sex acts between adults and applies to both males and females.

## 2. Sex Offender Registration

In 1995, Mississippi enacted the Mississippi Sex Offenders Registration Law. Miss. Code Ann. §§ 45-33-21 *et seq.* The legislature found "that the danger of recidivism posed by criminal sex offenders and the protection of the public from these offenders is of paramount concern and interest to the government." *Id.* § 45-33-21. The law established the MSOR, which requires registration for a range of offenses including convictions under the Unnatural Intercourse law or any "similar law of another jurisdiction." *Id.* § 45-33-47(2)(c)(i).

Approximately 35 Mississippi residents have convictions for Unnatural Intercourse or an out-of-state statute that criminalizes oral or anal sex with no additional elements. Of these, about 22 individuals are registered on the MSOR.

The registration law classifies offenses into "tiers" that determine the length of time an individual must register before she is allowed to petition a circuit court for removal from the registry. *Id.* § 45-33-47(2). Individuals with one conviction under the Unnatural Intercourse law (or a statute that Mississippi deems equivalent) fall into "Tier Two" and must register for a minimum of 25 years. *Id.* § 45-33-47(2)(c)(i). Two such convictions require lifetime registration with no possibility of removal. *Id.* § 45-33-47(d)(xvi). After Tier Two registrants complete 25 years on the registry, they may petition the court in which they were convicted for removal. *Id.* § 45-33-47(2). But incarceration for any offense restarts the minimum time requirement. *Id.* § 45-33-47(2)(a). Only four individuals have successfully petitioned for removal.

Registrants must adhere to a number of sweeping requirements. Every 90 days, they must re-register in-person with the Department of Public Safety and pay a fee. *Id*. § 45-33-31(1). Registration includes the submission of current personal information, including their street address and telephone number as well as the street address and telephone number of their employer. *Id*. § 45-33-25(2). They must carry state identification cards or driver's licenses that "bear a designation identifying the cardholder as a sex offender." *Id*. § 45-35-3(2).

A registrant that wishes to volunteer with an organization must disclose her sex offender status to the organization if it has "direct, private, and unsupervised contact with minors." *Id*. § 45-33-32(1). If the organization accepts the registrant as a volunteer, it must notify the parents of any minors involved in the organization of the registrant's criminal record. *Id*. § 45-33-32(2).

The Department of Public Safety lists registrants on its public website and discloses registrants to schools, social service agencies, prosecutors' offices, and law enforcement offices within the registrant's jurisdiction.[9] *Id*. § 45-33-36. Registrants may not live within 3,000 feet of schools, child-care facilities, child group homes, playgrounds, ballparks, or recreation facilities used by children. *Id*. § 45-33-25(4).

Failure to re-register or comply with another statutory requirement can result in arrest, driver's license suspension, a fine of $5,000, or imprisonment of up to five years. *Id*. § 45-33-33(2), (4), (7).

## II.     Cross Motions for Summary Judgment[10]

### A.     *Heck*

Defendants first argue that *Heck v. Humphrey* bars relief.

---

[9] *See* Mississippi Sex Offender Registry, www.state.sor.dps ms.gov (last visited July 10, 2018).
[10] In support of his Motion for Summary Judgment, Plaintiff submitted a Statement of Undisputed Facts on May 8, 2018. Defendants moved to strike this statement. Because the statement is a reiteration of Plaintiff's arguments in his briefs, the Court grants Defendants' Motion to Strike.

In *Heck*, the Supreme Court held that a state prisoner cannot attack the validity of her conviction or sentence in a § 1983 damages action without proving that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." 512 U.S. 477, 486-87 (1994). The Court's rationale was based, in part, on a desire to "avoid parallel litigation over the issues of probable cause and guilt," prevent "the creation of two conflicting resolutions arising out of the same or identical transaction," and preclude "a convicted criminal defendant [from making a] . . . collateral attack on the conviction through the vehicle of a civil suit." *Id.* at 484.

In *Muhammad v. Close*, the Supreme Court explained that *Heck* meant "that where success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." 540 U.S. 749, 751 (2004). In short, *Heck* created a "habeas exhaustion rule" in which plaintiffs must "resort to state litigation and federal habeas before § 1983." *Id.* at 751-52.

Although *Heck* originally appeared limited to damages suits, the Supreme Court extended this rule to claimants seeking declaratory or injunctive relief. In *Wilkinson v. Dotson*, the Supreme Court explained that "a state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit . . . *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."[11] 544 U.S. 74, 81 (2005).

---

[11] *See also Edwards v. Balisok*, 520 U.S. 641 (1998) (concluding that a prisoner's claim for declaratory relief and money damages was not cognizable because of *Heck*, but that *Heck* did not bar his claim for an injunction halting future unconstitutional procedures). Defendants cite *Mann v. Denton County*, but that opinion is unpublished and not precedent. *See* 5th Cir. R. 47.5.4. *Mann* references a published Fifth Circuit opinion, *Kutzner v. Montgomery Cty.*,

Here, Doe seeks a declaration that Mississippi's Unnatural Intercourse law is unconstitutional. Defendants argue that this relief would necessarily imply the invalidity of Doe's 1978 conviction. And because no court or tribunal has vacated or declared his conviction invalid, they say, the *Heck* doctrine bars Doe's claim.

Doe responds that the *Heck* doctrine is inapplicable here, as *Heck* and subsequent Supreme Court cases simply "impose a rule requiring exhaustion of habeas remedies." He asserts that habeas relief is unavailable to him since he is no longer in custody.[12]

The Supreme Court has not squarely addressed our situation. Dissenting and concurring opinions in *Spencer v. Kemna* questioned the applicability of *Heck* to an individual, such as Doe, who has no recourse under the habeas statute. *See* 523 U.S. 1, 19-21 (1998) (Souter, J., concurring, and joined by O'Connor, Ginsburg, and Breyer, JJ.); *id.* at 25 n.8 (Stevens, J., dissenting). Five justices agreed that once a prisoner is no longer in custody, "the habeas statute and its exhaustion requirement have nothing to do with his right" to pursue a 1983 case. 523 U.S. at 21 (Souter, J., concurring); *see id.* at 25 n.8 (Stevens, J., dissenting).

The circuit courts are divided on the question. Four circuits, including the Fifth Circuit, have held that an out-of-custody claimant must comply with *Heck*'s favorable-termination requirement. *See Deemer v. Beard*, 557 F. App'x 162, 166 (3d Cir. 2014) (citing First, Fifth, and Eighth Circuit cases). Six circuits, though, have held that under the *Spencer* plurality, a plaintiff may obtain relief under § 1983 when it is no longer possible to meet the favorable-termination

---

303 F.3d 339 (5th Cir. 2002), but that decision was overturned by the Supreme Court in *Skinner v. Switzer*, 562 U.S. 521, 524 (2002).

[12] A sex offender's ongoing registration does not satisfy the custody requirement for habeas relief, although he may be taken into custody if he violates the registration requirements. *See Calhoun v. Attorney Gen. of Colo.*, 745 F.3d 1070, 1074 (10th Cir. 2014) (citing Fourth, Sixth, Seventh, and Ninth Circuit cases).

requirement in a habeas action. *See Wilson v. Johnson*, 535 F.3d 262, 267 (4th Cir. 2008) (citing Second, Sixth, Seventh, Ninth, and Eleventh Circuit cases).

The Fifth Circuit case merits discussion. In *Randell v. Johnson*, the plaintiff filed his § 1983 suit after his release from prison, when he apparently no longer had access to habeas relief. 227 F.3d 300, 301 (5th Cir. 2000). The Fifth Circuit found that Randell, who sought damages for unconstitutional imprisonment, had not satisfied the favorable-termination requirement of *Heck*. *Id*. The Court determined that Randell had the ability to seek habeas relief while in prison, but failed to do so. It added, while "three circuits have concluded that the Supreme Court—if presented with the question—would relax *Heck*'s universal favorable termination requirement for plaintiffs who have no procedural vehicle to challenge their conviction[,] Randell has not shown that such a procedural vehicle is lacking; he speaks only of inability to obtain habeas relief." *Id*.

The question in this case is whether Doe has the ability to seek state habeas relief, which in Mississippi is called post-conviction relief (PCR). Defendants argue Doe has "a procedural vehicle to challenge his conviction" since "any convicted felon may return to the court he or she was convicted and request that a conviction be vacated as unconstitutional." It is not obvious whether Doe has such a procedural vehicle.

Under Mississippi's Uniform Post-Conviction Collateral Relief Act (UPCCRA), a PCR motion following a guilty plea must be filed within three years after entry of the judgment of conviction. *Pinkney v. State*, 192 So. 3d 337, 342 (Miss. 2015) (citing Miss. Code Ann. § 99-39-5(2)). However, "[e]rrors affecting fundamental constitutional rights are excepted from the procedural bars of the UPCCRA." *Rowland v. State*, 42 So. 3d 503, 508 (Miss. 2010).

Based on the Court's reading of the UPCCRA, Doe may have access to the PCR process since a fundamental right is at stake here. The conduct he says he engaged in is no longer criminal. But if Doe is right—that PCR is not available to address the constitutional violations in this case, § 1983 must be an avenue of recourse. The parties should be prepared to address this issue at the hearing.[13]

## B.    Due Process

### 1.    *Lawrence v. Texas*

In *Lawrence*, the Supreme Court facially invalidated a Texas law that prohibited persons from engaging in sodomy with a person of the same sex. 539 U.S. at 578. The Texas law violated the Due Process Clause of the Fourteenth Amendment. *Id.*; *see also Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 743 (5th Cir. 2008) ("The Court in *Lawrence . . .* overruled its decision in *Bowers v. Hardwick* and struck down Texas's sodomy ban").

Petitioners John Lawrence and Tyron Garner challenged their convictions under the Texas "Homosexual Conduct" law, which provided that "[a] person commits an offense if he engages in deviate sexual intercourse with another individual of the same sex." *Lawrence*, 539 U.S. at 563. The statute defined "deviate sexual intercourse" as sodomy, or "contact between any part of the genitals of one person and the mouth or anus of another person." *Id.*

The Supreme Court addressed three questions: (1) whether the criminalization of same-sex sodomy, "but not identical behavior by different-sex couples," violated the Equal Protection

---

[13] Since the parties submitted their briefs in this matter, the Fifth Circuit Court of Appeals handed down *Smith v. Hood*, 900 F.3d 180 (5th Cir. 2018). There, the court was called to address plaintiff's claim for monetary damages where one claims to have been unlawfully civilly committed.  In "[d]etermining whether a particular claim is barred by Heck," the court explained, "is 'analytical and fact intensive' and requires the court to consider the specifics of the individual claim.  W conduct this analysis by assessing whether a claim is 'temporally and conceptually distinct' from the related conviction and sentence. We ask whether the claims are 'necessarily inconsistent' with the conviction, or whether they can 'coexist' with the conviction or sentence without 'calling [it] into question." Id. at 185 (citations omitted).

Clause; (2) whether the criminalization of consensual sodomy, more broadly, violated liberty and privacy interests protected by the Due Process Clause; and (3) whether *Bowers* should be overruled. *Id*. at 564.

Although the *Lawrence* Court considered both equal protection and due process arguments for striking down the Texas law, it ultimately chose the broader due process basis to redress the harms of sodomy laws.[14] This deliberate choice provides helpful guidance for this case. Under an equal protection approach, there would be no need to overrule the Supreme Court's earlier ruling in *Bowers v. Hardwick*. The *Lawrence* Court, however, was concerned that an equal protection ruling might lead some "[to] question whether a prohibition would be valid if drawn differently, say, to prohibit the conduct both between same-sex *and* different-sex participants." *Id*. (emphasis added). The Court, by invalidating the law on substantive due process grounds, decided instead to protect consensual sodomy regardless of whether opposite sex or gay couples were involved.

In *Bowers*, Michael Hardwick was arrested for violating the Georgia anti-sodomy law. It provided, in relevant part that, "a person commits the offense of sodomy when he performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." *Bowers*, 478 U.S. at 188 n.1 (citing Ga. Code Ann. § 16-6-2 (1984)). Like Mississippi's Unnatural Intercourse law, the statute criminalized all sodomy, whether or not the participants were of the same sex. The Georgia law required that prosecutors prove only one element—that the defendant participated in anal or oral sex.

---

[14] Justice O'Connor, in concurrence, preferred to invalidate the law on equal protection grounds. In her view, it was more appropriate to use a gender-based (or sex-based) analysis since the state law treated the same conduct (sodomy) differently based on the sex of the participants. Justice O'Connor's concurrence would have resulted in a much narrower ruling. Under her approach, there was no need to overrule *Bowers*.

Prosecutors had decided not to charge Hardwick, but upon his release Hardwick brought an action in federal court to declare the law invalid. The *Bowers* Court upheld the Georgia statute as constitutional and concluded that the fundamental right to privacy did not have "any resemblance to the claimed constitutional right of homosexuals to engage in acts of sodomy." *Id.* at 190.

Seventeen years later, the *Lawrence* Court overruled *Bowers*.[15] Justice Kennedy's opinion declared, "*Bowers* was not correct when it was decided, and it is not correct today. . . . It ought not to remain binding precedent. *Bowers v. Hardwick* should be and now is overruled." *Lawrence*, 539 U.S. at 578. The *Lawrence* Court therefore determined that the Georgia statute (and, by logic, all others with indistinguishable language) violated the Due Process Clause as an "intrusion into the personal and private life of the individual." *Id.*

### 2. *MacDonald v. Moose*

In the wake of *Lawrence*, the Fourth Circuit considered a challenge to Virginia's anti-sodomy law. The "Crime Against Nature" statute provided, in relevant part: "If any person carnally knows in any manner . . . any male or female person by the anus or by or with the mouth, or voluntarily submits to such carnal knowledge, he or she shall be guilty of a Class 6 felony." *Singson v. Commonwealth*, 621 S.E.2d 682, 686 (Va. 2005) (citing Va. Code § 18.2-361). In *MacDonald v. Moose*, the Fourth Circuit found this provision facially unconstitutional under *Lawrence* because "the anti-sodomy provision, like the statute in *Lawrence*, applies without limits." 710 F.3d at 155.

---

[15] The Fifth Circuit has explained, "Justice O'Connor concurred in the majority's decision in *Lawrence* because she would have struck down the law on equal protection, not substantive due process, grounds. But the Court explicitly rested its holding on substantive due process, not equal protection." *Earle*, 517 F.3d at 744.

In 2004, MacDonald, an adult, propositioned a 17-year-old girl to perform oral sex. *Id*. at 156. He was convicted of two offenses: a misdemeanor offense of contributing to the delinquency of a minor, and a felony offense of violating Virginia's criminal solicitation statute. *Id*. at 155. The predicate felony for his criminal solicitation offense was Virginia's Crime Against Nature statute. *Id*.

MacDonald contended "that his criminal solicitation conviction, insofar as it was predicated on the anti-sodomy provision of Virginia Code section 18.2-361(A), contravened the Constitution." *Id*. at 156. The Fourth Circuit addressed the question of whether the provision was unconstitutional either facially or as applied to McDonald. *Id*.

The Fourth Circuit determined that the statute, as written, was facially unconstitutional under the Due Process Clause. *Id*. at 166. The *MacDonald* court reasoned as follows: (1) because Virginia's anti-sodomy statute was "materially indistinguishable from the anti-sodomy provision" in *Bowers*; (2) and the Supreme Court in *Lawrence* "recognized that the facial due process challenge in *Bowers* was wrongly decided"; therefore, (3) Virginia's statute likewise did "not survive the *Lawrence* decision." *Id*. at 163; *see Toghill v. Clarke*, 877 F.3d 547, 552 (4th Cir. 2017) (discussing *MacDonald*).

Having found a "constitutional flaw," the *MacDonald* court identified a remedy in the case *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320 (2006). In *Ayotte*, the Supreme Court held that "when confronting a constitutional flaw in a statute," federal courts should "try to limit the solution to the problem," for example, by "enjoin[ing] only the unconstitutional applications of a statute while leaving other applications in force, or . . . sever[ing] its problematic portions while leaving the remainder intact." *Id*. at 329. When a constitutional defect appears, "the normal rule is that partial, rather than facial, invalidation is the

required course." *Id*. (quotation marks and citation omitted). But courts should restrain themselves from "rewriting state law to conform it to constitutional requirements" since "making distinctions in a murky constitutional context, or where line-drawing is inherently complex, may call for a far more serious invasion of the legislative domain." *Id*. at 330.

The *MacDonald* court recognized that Virginia's Crime Against Nature statute had constitutional applications, *e.g.*, by criminalizing oral sex with a minor. Still, the court stressed that "[t]he anti-sodomy provision [did] not mention the word 'minor,' nor [did] it remotely suggest that the regulation of sexual relations between adults and children had anything to do with its enactment." *MacDonald*, 710 F.3d at 165. While "the Virginia General Assembly might be entitled to enact a statute specifically outlawing sodomy between an adult and older minor," the legislature had not done so—and the court was loathe to rewrite state laws. *Id*. Therefore, the provision "[could] not be squared with *Lawrence* without the sort of judicial intervention that the Supreme Court condemned in *Ayotte*." *Id*. at 167. The Fourth Circuit enjoined enforcement of the statute.

Since the *MacDonald* ruling, the Virginia General Assembly amended the Crime Against Nature statute to apply only to bestiality and incest. *See* Va. Code § 18.2-361 (amended 2014). The Supreme Court of Virginia also "adopted an authoritative, narrowing construction of the anti-sodomy statute so as to save it from total invalidation." *Toghill*, 877 F.3d at 554 (citing *Toghill v. Commw.*, 768 S.E.2d. 674, 681 (Va. 2015)). Virginia's highest court ruled that the provision was "invalid to the extent [it] appl[ied] to private, noncommercial and consensual sodomy involving only adults." *Toghill v. Commw.*, 768 S.E.2d. at 681. But the provision could "continue to regulate other forms of sodomy, such as sodomy involving children, forcible sodomy, prostitution involving sodomy and sodomy in public." *Id*. This "interpretation by the

Supreme Court of Virginia puts these words in the statute as definitively as if it had been so amended by the legislature." *Toghill*, 877 F.3d at 558.

### 3. Legal Standard

The parties dispute the legal standard applicable to this consituttional challenge.

Relying on *United States v. Salerno*, Defendants argue that Doe bears a heavy burden in seeking to invalidate a statute in its entirety:

> A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that *no set of circumstances exists under which the Act would be valid*. The fact that the . . . Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.

*Salerno*, 481 U.S. 739, 745 (1987) (emphasis added). Defendants contend that Doe cannot meet this high standard. Since Doe cannot show that the statute would be invalid as applied to his particular case, they say, Doe could not possibly satisfy the *Salerno* standard.

Doe proposes an alternative standard provided in *United States v. Stevens*: to succeed in a facial attack, the plaintiff must establish "that the statute lacks any 'plainly legitimate sweep.'" 559 U.S. 460, 472 (2010) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997) (Stevens, J., concurring)). Justice Stevens took this language ("plainly legitimate sweep") from *Broaderick v. Oklahoma*'s standard for overbreadth invalidation. *See* 413 U.S. 601, 615 (1973) ("[W]e believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep"). As a result, courts have often treated the plainly-legitimate-sweep test and the overbreadth doctrine as the same standard.[16]

---

[16] "Some have disputed whether Justice Stevens' "plainly legitimate sweep" standard is different from the overbreadth standard. . . . At the very least, Justice Stevens' 'plainly legitimate sweep' test is simply another lax invalidation rule, more similar to overbreadth than to Salerno." Scott A. Keller & Misha Tseytlin, *Applying Constitutional Decision Rules Versus Invalidating Statutes in Toto*, 98 VA. L. REV. 301, 358 n.208 (2012).

This standard "impose[s] a significantly lesser burden on the challenger." *Washington*, 521 U.S. at 740 n.7.

Defendants contend that the overbreadth plainly-legitimate-sweep test applies only in the First Amendment context. They are wrong. While the test is used "in relatively few settings," the Supreme Court has wielded it in contexts beyond the First Amendment, including in right to travel, abortion, and § 5 of the Fourteenth Amendment settings. *See Sabri v. United States*, 541 U.S. 600, 610 (2004) (collecting cases).

Still, it is not clear which standard is generally applicable. In *Stevens*, the Supreme Court "explicitly stated that it 'is a matter of dispute' whether Salerno's no-set-of-circumstances or overbreadth's plainly-legitimate-sweep test is the proper facial challenge standard."[17] At the same time, a plurality of the Supreme Court has rejected the use of the *Salerno* standard.[18] As one scholar noted, there is much "confusion over the proper standard" for facial challenges.[19]

Fifth Circuit precedent is equally unclear. In some cases, the circuit has applied only the *Salerno* standard. *See, e.g., McKinley v. Abbott*, 643 F.3d 403, 408 (5th Cir. 2011). In others, it has held that the standard remains open. *See, e.g., In re IFS Fin. Corp.*, 803 F.3d 195, 208 (5th Cir. 2015); *Int'l Women's Day March Planning Comm. v. City of San Antonio*, 619 F.3d 346, 355 (5th Cir. 2010). One Fifth Circuit judge has commented, "Controversy among Supreme Court Justices and doubt among the lower courts regarding the 'no set of circumstances' language has persisted since that phrase first appeared in *United States v. Salerno*." *Sonnier v.*

---

[17] *Id.*
[18] *See Morales*, 527 U.S. at 55 n.22 (plurality opinion) ("To the extent we have consistently articulated a clear standard for facial challenges, it is not the *Salerno* formulation, which has never been the decisive factor in any decision of this Court, including *Salerno* itself"); *Janklow v. Planned Parenthood Sioux Falls Clinic*, 517 U.S. 1174, 1175-76 (1996) (Stevens, J., denying petition for certiorari) (noting that "the dicta in *Salerno* does not accurately characterize the standard for deciding facial challenges and neither accurately reflect[s] the Court's practice with respect to facial challenges, nor is it consistent with a wide array of legal principles").
[19] Keller, *supra* note 16, at 311.

*Crain*, 613 F.3d 436, 462-63 (5th Cir. 2010) (Dennis, J., concurring in part and dissenting in part).

With this conflicting guidance in mind, the Court looks to the most analogous case: the Fourth Circuit's decision in *MacDonald*.[20] Relying on *Lawrence*, the *MacDonald* court held that Virginia's anti-sodomy law was facially unconstitutional. Virginia's statute, by its terms, criminalized sodomy between consenting adults just like Georgia's statute had, and therefore could not support MacDonald's conviction, even though his actual conduct involved a minor. The Fourth Circuit's reasoning provides helpful insight in assessing the constitutionality of Mississippi's Unnatural Intercourse law.

### 4.    This Suit

That brings us to this action. Doe maintains that the Supreme Court "held in *Lawrence* that a criminal statute whose only element is the commission of oral or anal sex is unconstitutional." And because Mississippi's law criminalizes sodomy, without limits, the law does not survive *Lawrence*.

Defendants respond that Doe misinterprets *Lawrence*. In their view, *Lawrence* protects only private, consensual, sexual activity between adults. Therefore, the State can enforce its anti-sodomy law in cases involving nonconsensual sodomy, as in Doe's case. Defendants reference the conclusion of the *Lawrence* opinion, where Justice Kennedy noted that:

> The present case does not involve minors. It does not involve persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused. It does not involve public conduct or prostitution. It does not involve whether the government must give formal recognition to any relationship that homosexual persons seek to enter. The case does involve two adults who, with

---

[20] While *MacDonald* does not bind this Court, the Fifth Circuit is "always chary to create a circuit split." *Alfaro v. Comm'r of Internal Revenue*, 349 F.3d 225, 229 (5th Cir. 2003). *But see Barber v. Bryant*, 872 F.3d 671, 674 (2017) (Dennis, J,, dissenting) ("The panel opinion misconstrues and misapplies the Establishment Clause precedent, and … its analysis creates a conflict between our circuit and our sister circuits on the issue of Establishment Clause standing.").

full and mutual consent from each other, engaged in sexual practices common to a homosexual lifestyle.

*Lawrence*, 539 U.S. at 578. Defendants argue that, based on this dicta, "the *Lawrence* Court identified only one unconstitutional application: private sexual activity between consenting adults." Pointing to Doe's criminal history report, the State alleges that Doe engaged in nonconsensual sodomy. And for that reason, they say, he is not entitled to as-applied or facial relief.

It is worth pausing here a moment. The Court does not know whether Doe committed consensual or nonconsensual sodomy. The question in an as-applied challenge is whether the law, as written by the state legislature, is constitutional. Therefore, what is pertinent is Doe's conviction, not the facts alleged to underlie his conviction. Mississippi prosecutors must prove only one element to support a conviction under the anti-sodomy statute: participation in an act of sodomy. This is the only conduct of which Doe admitted guilt, and he did so without the benefit of plea colloquy.

The MSOR similarly does not call for a post hoc inquiry into the underlying facts of an offense. Only the conviction necessitates registration. Mississippi Code § 45-33-25(1)(a), which requires registration for "[a]ny person . . . who has been convicted of a registrable offense," makes no mention of facts.[21] For example, an individual that is initially charged with sexual battery, Miss. Code Ann. § 97-3-95, *but* accepts a plea or is convicted of simple assault, Miss. Code Ann. § 97-3-7, does not register with the MSOR—she was not convicted of a registrable

---

[21] A "registrable offense" is a conviction under a defined list of statutes, including Unnatural Intercourse. *See* § 45-33-23(h).

offense. The State does not require her to register with the MSOR because the conviction is the sole trigger.[22]

      *Lawrence* confirms that states may pass laws that criminalize sexual activity involving force, minors, public conduct, or prostitution.[23] The Mississippi legislature has done so in a variety of different statutes. *See* Miss. Code Ann. § 97-3-7 (simple and aggravated domestic violence); *id.* § 97-3-65 (statutory rape; forcible sexual intercourse); *id.* § 97-3-71 (assault with intent to ravish); *id.* § 97-3-95 (sexual battery); *id.* § 97-29-49 (prostitution). But the Unnatural Intercourse law, as written, lacks those additional elements.

      If the state legislature wishes to narrow the scope of the Unnatural Intercourse law to criminalize acts of sodomy involving minors, it may do so. The legislature has yet to take that action, however. And it is not within this Court's authority to tack on words—*e.g.*, "with minors," "without consent"—that are not in the statute. Only the legislature can do that. The anti-sodomy statute, as written, criminalizes sodomy broadly—and that is the very reason why it is unconstitutional.

      Another branch of state government could remedy the problem, too. The Mississippi Supreme Court, as the Supreme Court of Virginia did following the *MacDonald* decision, may adopt a narrowing construction of the anti-sodomy statute to save it from invalidation. Federal courts "have long respected the State Supreme Courts' ability to narrow state statutes so as to limit the statute's scope to unprotected conduct." *Osborne v. Ohio*, 495 U.S. 103, 120 (1990).

---

[22] *See* Affidavit and Report of Robert Rudder, Docket No. 93-1 (discussing common defense strategy of bargaining for a non-registrable offense).

[23] The Fourth Circuit rejected the same argument in *MacDonald*. *See* 710 F.3d at 163 n.13 ("The anti-sodomy provision in this case, being indistinguishable for all practical purposes from the statute that we now know should have been negated in *Bowers*, also does not involve minors").

Since federal courts "lack jurisdiction authoritatively to construe state legislation," only the state courts "can supply the requisite construction." *Gooding v. Wilson*, 405 U.S. 518, 520 (1972).

The Mississippi Supreme Court has so far declined to narrow the construction of the statute. In *Contreras v. State*, the defendant, who was convicted under the Unnatural Intercourse law, asserted that the sexual battery statutes "should supersede and take precedence over" the anti-sodomy statute because "public morals in this modern day condone and permit the acts charged against him." 445 So. 2d 543, 545 (Miss. 1984). The court rejected this argument and responded "that the courts interpret statutes and decide the law. The enactment, modification, amendment or repeal of statutes are for the legislature." *Id.*

The Unnatural Intercourse law is "materially indistinguishable" from the Georgia statute struck down in *Lawrence* and the Virginia provision enjoined by the Fourth Circuit. *MacDonald*, 710 F.3d at 164. As written and interpreted by state courts, the Mississippi anti-sodomy statute bars any act of sodomy. There is no factor requiring that the act be nonconsensual, public, or with a minor.[24] Accordingly, the Mississippi statute cannot be squared with *Lawrence*.

Given this constitutional defect, the Court must next determine the remedy. Doe calls for the invalidation of the statute *in toto*. He says the Court "should not attempt to save Mississippi's unconstitutional statute by judicially rewriting it" as "[s]uch drastic action would be contrary to Supreme Court precedent."

---

[24] Defendants emphasize that the law does not target lesbian and gay individuals because it does not criminalize same-sex participants exclusively. That argument is devoid of context: "[s]odomy statutes are socially understood as homosexual laws, even if in fact or in origin they are not." Christopher R. Leslie, *Creating Criminals: The Injuries Inflicted by "Unenforced" Sodomy Laws*, 35 HARV. C.R.-C.L. L. REV. 103, 111 (2000). The Unnatural Intercourse law contributes to the discriminatory treatment of lesbian and gay citizens. As the Supreme Court explained in *Lawrence*, when sodomy "is made criminal by the law of the State, that declaration in and of itself is an invitation to subject homosexual persons to discrimination both in the public and in the private spheres." 539 U.S. at 567. Even when anti-sodomy statutes are not enforced, the very existence of such laws create "a criminal class" of lesbians and gay individuals, "who are consequently targeted for violence, harassment, and discrimination because of their criminal status." Leslie, 35 HARV. C.R.-C.L. L. REV. at 103.

Where partial, rather than facial, invalidation is possible, it is the "required course." *Ayotte*, 546 U.S. at 329. Under that precedent, though, it is not within this Court's authority to rewrite Mississippi's anti-sodomy statute by adding words—*e.g.*, nonconsensual—that the state legislature explicitly did not include. Such a modification would exceed the judiciary's institutional role and constitute a "far more serious invasion of the legislative domain" than the Court is authorized to undertake. *Id*. at 330. This would create a "dangerous" precedent to encourage the legislature to "set a net large enough to catch all possible offenders, and leave it to the courts to step inside to announce to whom the statute may be applied." *Id*. To narrow the sodomy prohibition in accord with *Lawrence* would require judicial intervention forbidden in *Ayotte*.

For these reasons the Unnatural Intercourse statute may indeed run afoul of the Fourteenth Amendment and need to be enjoined. The Court will defer ruling on the constitutionality of the statute until the issue regarding Doe's ability to seek post-conviction relief is resolved.

## III.    Conclusion

Defendants' Motion to Exclude Plaintiff's Expert, Robert Rudder, is DENIED. Defendants' Motion to Strike Plaintiff's Statement of Undisputed Facts is GRANTED.  A hearing is set on the parties' pending Motions for Summary Judgment for October 10, 2018.

**SO ORDERED**, this the 1st day of October, 2018.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE