IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ARTHUR DOE, et al.**  **PLAINTIFFS**

**V.**  **CAUSE NO. 3:16-CV-789-CWR-FKB**

**LYNN FITCH, et al.**  **DEFENDANTS**

## ORDER

Before the Court is plaintiffs' motion for attorneys' fees and costs. Docket No. 154. Upon review of the parties' briefing and supporting materials, and the applicable law, the motion will be granted in part and denied in part.

**I.        Factual and Procedural History**

Pseudonymous plaintiffs Arthur, Brenda, Carol, Diana, and Elizabeth Doe are residents of Mississippi. They were required to register as sex offenders as a result of a conviction under Mississippi's "Unnatural Intercourse" statute or an equivalent out-of-state offense. The "Unnatural Intercourse" statute criminalizes, in relevant part, "the detestable and abominable crime against nature committed with mankind." Miss. Code Ann. § 97-29-59. The Mississippi Supreme Court has defined the statute to encompass the behavior of oral and anal sex, commonly referred to as "sodomy." *See, e.g.*, *Miller v. State*, 636 So. 2d 391 (Miss. 1994); *State v. Davis*, 79 So. 2d 452 (Miss. 1955).

Plaintiffs retained counsel who initiated discussions with the Mississippi Attorney General's Office in January 2016, with the hope of avoiding costly litigation.  Those talks lasted until August, but ultimately failed. In October the plaintiffs filed suit. In this lawsuit plaintiffs asserted that the proscribed conduct is protected by the Due Process Clause of the Fourteenth Amendment, and they should not be subjected to the cumbersome and stigmatizing requirements

imposed by the Mississippi Sex Offender Registry ("MSOR"). Alternatively, they argued that their inclusion on the MSOR violated the Fourteenth Amendment's Equal Protection Clause.

Arthur Doe is a Mississippi resident convicted under Mississippi's Unnatural Intercourse statute. Brenda Doe, Carol Doe, Diana Doe, and Elizabeth Doe are Mississippi residents convicted of Louisiana's Crime Against Nature by Solicitation (CANS) law. Because of these offenses, the State required plaintiffs to register with the Mississippi Department of Public Safety as sex offenders.

In February 2018, during a settlement conference before U.S. Magistrate Judge F. Keith Ball, the State agreed to remove all persons convicted under Louisiana's CANS law from the MSOR. This relieved four of the plaintiffs and 20 others from the MSOR and its obligations. Notably, the agreement was based in part on 2012 and 2013 rulings from the U.S. District Court for the Eastern District of Louisiana that declared Louisiana's CANS law violative of the Equal Protection Clause of the Fourteenth Amendment, *see Doe v. Jindal*, 851 F. Supp. 2d 995 (E.D. La. 2012) ("*Doe I*"), and required Louisiana to remove CANS offenders convicted unconstitutionally from Louisiana's sex offender registry, *Doe v. Caldwell*, Civil Case No. 12-1670 (E.D. La) ("*Doe II*"). *Doe I* and *Doe II* were brought by plaintiffs' counsel in the present case.

This left Arthur Doe, the sole plaintiff convicted under Mississippi's Unnatural Intercourse statute. The parties filed cross motions for summary judgment. This Court ruled that because Mississippi's anti-sodomy statute criminalizes consensual sex acts between adults, the statute is likely unconstitutional. *See* Docket No. 147 at 2. But pursuant to Mississippi's Uniform Post-Conviction Collateral Relief Act, Arthur Doe must first seek relief in state court. Accordingly, on May 13, 2019, this Court stayed all proceedings pending a state court ruling.

2

The Circuit Court of Hinds County, Mississippi later vacated Doe's conviction, *see* Docket. No. 156, which resulted in the undersigned dismissing Doe's claims with prejudice as moot, *see* Docket No. 157.

Now this Court rules on the plaintiffs' motion for attorneys' fees and costs.

The parties do not dispute that plaintiffs are entitled to an award of attorneys' fees and costs. The question before this Court is what amount is reasonable. Plaintiffs have requested a total award of $412,109.08. The State argues that given the limited relief obtained, the award sought by plaintiffs isn't reasonable and "must be substantially reduced . . . . to no more than $75,000." Docket No. 159 at 1-2, 28.

## II.     Legal Standard

Under the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, prevailing plaintiffs in civil rights cases "should ordinarily recover an attorney's fee." *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The purpose of section 1988 is to ensure effective access to the judicial process for persons with civil rights grievances." *Id.* (internal quotation marks omitted). This purpose will be achieved only if prevailing plaintiffs' counsel recover a fee "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010).

The Fifth Circuit employs a two-step process to decide the reasonableness of attorneys' fees. First, the court must calculate a "lodestar" by multiplying the reasonable hourly rates for the participating plaintiffs' attorneys by the number of hours reasonably expended on the case.

After determining the lodestar, the court may adjust the lodestar after considering 12 factors commonly known as the *Johnson* factors. *Lighthouse Rescue Mission, Inc. v. City of Hattiesburg, Miss.*, No. 2:12-CV-184, 2014 WL 4402229, at *3 (S.D. Miss. Sept. 5, 2014). They are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 717-19 (5th Cir. 1974).

"The United States Supreme Court has stated that many of the Johnson 'factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07-CV-568-HSO-RHW, 2011 WL 6699447, at *3 (S.D. Miss. Dec. 21, 2011) (quoting *Hensley*, 461 U.S. at 434 n. 9). And "trials courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

## III. Discussion

The lodestar calculations plaintiffs seek are set forth in the following table:

| Attorney or Paralegal | Proposed Hourly Rate | Hours Expended | Lodestar (*incorporates -10% adj.) |
|---|---|---|---|
| Robert McDuff | $450 | 12.7 | $5,715 |
| Jake Howard | $400 | 11.2 | $4,480 |
| Ghita Schwarz | $450/$225 Travel | 332.6/46.3 Travel | *$134,703.00/ $9,375.75 |
| Alexis Agathocleous | $450/$225 Travel | 110.8/31.3 Travel | *$44,874.00/$6,338.25 |
| Shayana Kadidal | $550 | 51 | *$25,245.00 |
| Stephanie Llanes | $250/$125 Travel | 125.5/17 Travel | *$28,237.50/$1,912.50 |
| Claire Dailey | $125 | 72.5 | *$8,156.25 |
| Matthew Strugar | $450/$225 Travel | 234.1/44.4 Travel | $105,345/$9,990 |

4

**A. Reasonable Hourly Rates for Local Counsel**

The first question is whether each attorney's hourly rate is reasonable given the attorney's ability, competence, experience, and skill. Generally, this is a localized inquiry based on the prevailing marking rates of comparable attorneys in the community. *See, e.g., Watkins v. Fordice*, 7 F.3d 453, 458 (5th Cir. 1993) ("Appellants submitted affidavits of their attorneys' billing rates, as well as affidavits from other attorneys in the community showing customary market rates in the area."); *see also Lighthouse Rescue Mission, Inc.,* 2014 WL 4402229, at *3 n.4 (considering rates approved in other civil rights cases in the Southern District). In the present case, local attorneys Robert McDuff and Jake Howard seek an hourly rate of $450 and $400, respectively. The State counters that the rates should be $325 for McDuff and $275 for Howard, given their limited involvement in this case. Specifically, McDuff claims just 12 hours, and Howard, 11.

McDuff graduated from Harvard Law School in 1980 and has over 40 years of experience in civil rights litigation, including several arguments before the United State Supreme Court. He is a founding board member of the Mississippi Center for Justice and has served as faculty at the University of Mississippi Law School. In *Thomas v. Reeves*, this Court found an hourly rate of $450 for McDuff was reasonable. No. 3:18-CV-441-CWR-FKB, 2021 U.S. Dist. LEXIS 26320, at *13 (S.D. Miss. Feb. 11, 2021). In that voting rights case, McDuff was lead co-counsel, and averred that he "ha[d] more experience in voting rights cases than any other particular type of case," and that he was "one of the three most experienced lawyers in Mississippi at litigating voting rights case on behalf of minority voters." *Id.* at 12. In this case McDuff attested that for those clients who can afford it, his hourly rate is $500 per hour. Docket No. 154-4 at 4. That rate fell within the 2016 customary and reasonable rate of Mississippi lawyers involved in complex litigation. *Id.* (citing *McWilliams v. Advanced Recovery Systems, Inc.*, No. 3:15-CV-70-CWR-

LRA, 2017 WL 2625118, at *2 (S.D. Miss. June 16, 2017)). A rate of $450, therefore, is reasonable for McDuff's work assisting as local counsel in this case.

Jake Howard, formerly an associate at McDuff's law firm, seeks an hourly rate of $400. Howard graduated from Harvard Law School in 2009, and after completing a federal judicial clerkship, he litigated criminal and civil rights cases for nearly a decade. McDuff's declaration states that "the rate of $400 per hour is within, and does not exceed, the range of prevailing market rates for a lawyer of his experience for complex litigation in the Southern District of Mississippi." Docket No. 154-4 at 5. An affidavit filed by attorney Cliff Johnson states that he is familiar with the skill, reputation, and experience of Howard and that $400 does not exceed the rates charged in this community. Docket No. 154-5 at 6. Based on the Court's research and other record evidence, an hourly rate of $385 is reasonable for Howard's work assisting as local counsel in this case. *See, e.g., Benham v. City of Jackson*, 2022 WL 2033333 at *11.

### B. Reasonable Hourly Rates for Out-of-District Counsel

Plaintiffs' out-of-district counsel are from the Center for Constitutional Rights (CCR), which is located in New York City, and the Law Office of Matthew Strugar, located in Los Angeles, California. Typically, local rates apply, but "where out-of-district counsel are proven to be necessary to secure adequate representation for a civil rights plaintiff, the rates charged by that firm are the starting point for the lodestar calculation." *McClain v. Lufkin Industries, Inc.*, 649 F.3d 374, 383 (5th Cir. 2011). This exception specifically applies "where . . . abundant and uncontradicted evidence prove[s] the necessity of . . . turning to out-of-district counsel." *Id.*

Relying largely on an affidavit from Cliff Johnson, an Assistant Professor of Law and Director of the Roderick and Solange MacArthur Justice Center at the University of Mississippi School of Law, plaintiffs argue that they meet the standard set forth in *McClain*. Specifically, that

6

while there are Mississippi attorneys that are willing to assist as local counsel on matters like the present one, many do not have the support staff or access to substantial resources needed for a case like this. Further, Johnson attests,

> While there are obviously law firms in Mississippi with the time and resources to handle complex litigation, I am not aware of any such firm that would have been willing to handle a complex pro bono matter for sex offenders. For several reasons, such a case would be highly undesirable to such local lawyers. Obviously, sex offenders are a reviled class. Many Mississippi lawyers would not represent sex offenders for personal reasons or because they are concerned about losing paying matters from clients or potential clients. Moreover, even if there are firms who would be able to expend the time and resources to handle a complex multi-year sex-offender rights case, I am aware of none with the background in this area of the law, which would significantly increase the time necessary to litigate the case while their lawyers got up to speed. And even if they were otherwise willing and had the time and resources, I am not aware of any firms that would commit that sort of time and resources where the prospect of payment was uncertain, where a premium on their fees was unlikely, and where any such payment would not come until well after the conclusion of the case.

Docket No. 154-5 at 4.

This Court agrees that plaintiffs could not have obtained adequate representation in this matter—much less representation of the same quality as that of plaintiffs' out-of-state attorneys—from a team comprised exclusively of in-state lawyers.

The CCR has already successfully litigated two similar challenges in *Doe I* and *Doe II*. In fact, the CCR was contacted by Brenda Doe, a plaintiff in the present case, because she had also been a class representative in *Doe II*. Brenda Doe requested the CCR's advice because Mississippi refused to remove her from the MSOR for her Louisiana conviction, even though she had already been removed from Louisiana's sex offender registry based on the success of *Doe II*. Docket No. 154-2 at 2-3. The complaint from Brenda Doe to the CCR was the impetus of this case. And like *Doe I* and *Doe II*, plaintiffs envisioned this case as a multi-year, class action suit, requiring

significant time and resources. Given the evidence and surrounding circumstances, this Court finds that turning to out-of-district counsel was necessary and thus, reasonable.[1]

As a final point, the Court notes that all counsel, local and out-of-district, submitted blended or downwardly modified hourly rates of $550 or less, which this Court, and many others in the Southern District have generally deemed a reasonable range. *See Thomas*, 2021 U.S. Dist. LEXIS 26320, at *13-14 (collecting cases).

Now the Court considers each out-of-district counsel's hourly rate.

First, Shayana Kadidal requests an hourly rate of $550. Kadidal graduated from Yale Law School in 1994 and has worked with the CCR since 2001. The State admits that Kadidal has substantial experience but notes that Kadidal had such a limited role in this litigation that such a steep rate is not justified. For example, Kadidal billed a total of 80 hours to this case and many of those hours were related to the plaintiffs' fee application. The Court agrees that Kadidal's contributions to the present litigation does not warrant a rate of $550, but that the State's proposal of $300 is inappropriate for someone of Kadidal's skill and experience. As this Court recognized in *Thomas*, for "lawyers with 25 years of experience or more, a rate of $450 would be within the market range." *Id.* at *15. The Court finds that an hourly rate of $450 is reasonable here.

Ghita Schwarz graduated from Columbia University School of Law in 1998 and spent almost a decade in public interest litigation before moving to complex constitutional and civil rights litigation in 2007. Schwarz worked at CCR from 2012 to 2021 and served as lead counsel

---

[1] The value and need for these lawyers are underscored by the fact that this case was brought thirteen years after *Lawrence v. Texas*, 539 U.S. 558 (2003), declared that laws like Mississippi's Unnatural Intercourse statute were unconstitutional. In response the State points to two cases where lawyers have filed petitions in state court for individual sex offenders' removal from the registry. *See* Docket No. 159, at 22 n.5. Obviously, seeking such relief for an individual offender is not equivalent to this type of civil rights case challenging an entire registration scheme in federal court. The relief is different. The path to relief is different. The work necessary to get to the relief is different. The false equivalency the State urges is rejected.

in this case. Given her skill, experience, and role in this litigation, the Court finds that Schwarz will receive the hourly rate she seeks, $450.

Alexis Agathocleous graduated from Yale Law School in 2003 and now serves as the Deputy Director of the ACLU's Racial Justice Program. While at CCR, Agathocleous served as the Deputy Legal Director. He too put in significant time, 110 hours, and given his skill, experience, and integral role in this litigation, the Court finds that Agathocleous' rate of $450 is reasonable.

Stephanie Llanes graduated from the University of California–Berkeley School of Law in 2016 and worked at CCR until 2018 as a Bertha Justice Fellow. She seeks an hourly rate of $250. The State claims that given Llanes' lack of litigation experience while working on this case, a rate of $200 is more appropriate. This Court finds that $225 is reasonable for a newly practicing attorney. *See id.* at *18 (awarding a 2016 graduate an hourly rate of $225)*; see also Currier*, 2019 U.S. Dist. LEXIS 16392, at *17 (granting New York City based junior associates an hourly rate of $225 in a complex civil rights case).

Claire Dailey is an experienced Senior Legal Worker at CCR. This Court agrees with plaintiffs that the paralegal hourly rate of $125 is reasonable for her services. *See McWilliams*, 2017 U.S. Dist. LEXIS 92945, at *10.

Finally, Matthew Strugar, along with Schwartz, performed the lion's share of work in this case. Strugar graduated from the University of Southern California School of Law in 2004 and then joined the CCR. Strugar later joined the Disability Rights Legal Center in Los Angeles, California, and eventually left to become the Director of Litigation at the PETA Foundation. Now, Strugar is a solo practitioner based in Los Angeles. Though his local rate is $725 an hour, and he

9

is routinely granted rates that exceed $500 by courts in California, he seeks $450 in the present case. The Court agrees that $450 is a reasonable hourly rate for Strugar.

### C. Reasonable Hours Expended

The State then argues that the hours claimed by plaintiffs' attorneys were not reasonably expended. It has identified eight categories of objections:

> (i) Excessive Time for Task Performed; (ii) Vague Time Entries Lacking Explanatory Detail; (iii) Duplicative Hours for Multiple Counsel; (iv) Conferences, Meetings, or Telephone Conversations; (v) Not Related to Successful Claim on Behalf of CANS Plaintiffs; (vi) Not Successful on a Discrete Issue; (vii) Paralegal or Clerical Work Performed by Attorney; and (viii) Work On Attorney Fee Application.

Docket No. 159 at 4-5. According to plaintiffs' calculations, the State has made 2,033 objections to plaintiffs' 1,069 time entries. Docket No. 160 at 3.

As an initial note, the CCR has cut 10% of all its attorneys' fees and no attorney has requested fees after February 2018 other than work related to the present application. Put another way, the plaintiffs are not requesting fees for work pertaining to just Arthur Doe. Still, the State argues that these reductions are an inadequate show of billing judgment. It urges the Court to further reduce the total number of hours each timekeeper spent by an across-the-board percentage. The Court agrees, and for the reasons explained below, will reduce all plaintiffs' counsels' hours expended by a total of 15%. *See Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996).

### i. "Excessive Time for Task Performed"

The State's challenges under this category center on hours which it deems disproportionate to a discrete task. This objection applies to 81 entries, totaling 164.2 hours. As an example, the State cites to the 70 hours spent in connection with the plaintiff's briefing of their motion to proceed under pseudonyms and to file documents under seal. The State, however, challenged that

10

motion vigorously. In this Court's Order granting the plaintiffs' motion, the undersigned noted that,

> this suit requires the disclosure of plaintiffs' private lives, including information of the utmost intimacy. Here, plaintiffs are required to reveal information concerning private, consensual sexual conduct common to a homosexual lifestyle. The Fifth Circuit explicitly listed homosexuality among those matters of a sensitive and highly personal nature . . . [when] the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter.

Docket No. 43 at 4 (internal citations and quotations omitted).

While "[they] had the right to play hardball in contesting [plaintiffs'] claims, it is also appropriate that [they] bear the cost of their . . . strategy." *Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984) (rev'd on other grounds); *see also Schwarz v. Folloder*, 767 F.2d 125, 134 (5th Cir. 1985) (stating that "[i]t is unbecoming" for the defendants to insist on litigation "and then to complain when the [prevailing party] hires skillful, experienced and expensive advocates . . . . Having wrongfully kicked the snow loose at the top, the[y] must bear the consequences of the avalanche at the bottom."). No reduction is warranted here.

### ii. "Vague Time Entries Lacking Explanatory Detail"

The State objects to entries "which fail to specify the exact work product produced or fail to describe the exact legal tasks performed, such as 'research case law,' 'discussions with counsel,' 'conference with co-counsel,' 'preparing case materials,'" as vague and insufficient. Docket No. 159 at 13-14. The Court credits the State's contention that lack of details inhibits its ability to object substantively, however, considering the context provided by surrounding entries, they are not "too vague to permit meaningful review." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995). The "practical considerations of the daily practice of law in this day and age preclude 'writing a book' to describe in excruciating detail the professional services rendered for each hour or fraction of an hour." *LULAC v. Roscoe Ind. Sch. Dist.*, 119 F.3d 1228, 1233 (5th Cir.

1997). Counsel are "not required to record in great detail how each minute of [their] time was expended." *Hensley*, 461 U.S. at 437 n.12. They need only provide "the date, the number of hours spent (calculated to a tenth of an hour), and a short but thorough description of the services rendered." *LULAC*, 119 F.3d at 1233. As a result, no reduction is warranted here.

### iii.   "Duplicative Hours for Multiple Counsel"

The State has challenged 505 entries, totaling 655.1 hours, as duplicative. Particularly, any event where more than one of plaintiffs' attorneys participated, like team meetings, certain depositions, court appearances, and settlement hearings, was objected to as duplicative. The State observes that three attorneys, Schwartz, Strugar, and Llanes, all attended depositions.

Although the State insists that this was duplicative, the Court credits plaintiffs' explanation that there were only two depositions taken in this case, and that the case potentially rested on their outcome. Upon review of the billing records, the Court finds that this category of objections does not warrant a reduction.

### iv.   "Conferences, Meetings or Telephone Conversations"

The State argues that "[e]xcessive and unnecessary communication between counsel, in person, over the telephone, and via e-mail, may be the single most abused time entry[.]" Docket No. 159 at 10. This case, however, involved numerous attorneys and clients, located all over the United States, and strategic planning, like considerations to protect plaintiffs' identities and pursue class certification. *See, e.g., Taylor v. Wash. Mut., Inc.*, No. 3:04-CV-0521, 2015 U.S. Dist. LEXIS 112427, at *26 (W.D. La. Aug. 24, 2015) (noting that cases which require planning trial strategy might warrant frequent and substantive conferences.). Moreover, courts regularly find that "conferences between attorneys to discuss strategy and prepare for oral argument are an essential part of effective litigation." *McKenzie v. Kennickell*, 645 F. Supp. 437, 450 (D.D.C. 1986). Here,

the Court finds that communication was an effective and essential tool and thus, no reduction is appropriate.

### v.   Hours "Not Related to Successful Claim on Behalf of CANS Plaintiffs"

This dispute centers on the Supreme Court's guidance in *Hensley v. Eckerhart*, 461 U.S. 424 (1983). *Hensley* instructs district courts that in determining what fee is "reasonable," to consider whether "claims for relief [] are based on different facts and legal theories" as to be considered "unrelated." *Id.* at 435. If unrelated, *Hensley* requires that the "claims be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* But if the district court finds that the claims are related, the inquiry turns to the "results obtained." *Id.* at 434 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (1974)).

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. "Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters." *Id.* Where only partial or limited success is achieved, district courts have discretion to adjust accordingly even if the claims "were interrelated, nonfrivolous, and raised in good faith." *Id.* at 436.

According to the State, plaintiffs' substantive due process claim was "unrelated" to plaintiff's equal protection claim, and moreover, "unsuccessful." Relying on *Hensley*, the State contests all fees related to the due process claim on these grounds.

The Court disagrees that plaintiffs' claims are unrelated. As noted in *Hensley*, "cases involving such unrelated claims are unlikely to arise with great frequency," as "[m]any civil rights cases will present only a single claim," or "plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories." *Id.* at 435. The latter is true here. Plaintiffs'

13

claims center on the same facts and the legal theories are interrelated. Accordingly, the Court finds that plaintiffs' claims are not unrelated, and turns to the results obtained.

On one hand, all plaintiffs (and 24 others) were removed from the MSOR through the efforts of plaintiffs' counsel. On the other hand, however, plaintiffs did not enjoin or otherwise invalidate Mississippi's anti-sodomy law—one of the lawsuit's central issues. Case law suggests that a reduction is appropriate in such circumstances. *See Commonwealth Oil Refining Co., Inc. v. EEOC*, 720 F.2d 1383, 1385 (5th Cir.1983) (explaining that the "proper focus is whether the plaintiff has been successful on *the central issue* . . . . as exhibited by the fact that he has acquired *the primary relief sought*") (emphasis in original). The plaintiffs did not prevail in their efforts to invalidate the state statute, and accordingly a downward adjustment is warranted. Because it would be impossible to extrapolate the amount of time expended on this issue alone, the Court will reduce plaintiffs' total hours expended.

### vi. "Not Successful on a Discrete Issue"

The State next claims that plaintiffs should not be compensated for time spent working on the November 2016 motions for summary judgment and class certification. *See* Docket Nos. 15 and 20. The undersigned did not reach the merits of those motions as they were denied without prejudice in favor of the State's motion for discovery.

On one hand, it was the State that pressed for costly and timely discovery while the plaintiffs' pushed for a speedy resolution. And though the plaintiffs ultimately abandoned their claim for class certification, the Court credits their explanation that the settlement for the CANS offenders, which was a success, reduced the putative class below the numerosity threshold.

On the other hand, however, the hours billed must have been for time reasonably spent on work in furtherance of claims in which the plaintiffs prevailed, *see Von Clark v. Butler*, 916 F.2d 255, 259 (5th Cir.1990), and plaintiffs did not. Therefore, a slight reduction is warranted here. The

Court, rather than cosplay as a green-eyeshade accountant, will reduce plaintiffs' hours expended by a percentage.

### vii.   "Paralegal or Clerical Work Performed by Attorney"

The State has identified 168 entries, totaling 96 hours, as clerical or administrative tasks that were billed at an attorneys' rate. The plaintiffs agree that 22.5 hours should have been billed at a paralegals' rate rather than an attorneys' rate but oppose any reduction to the remaining hours.

Upon review, many of the State's objections under this category are well-taken. Plaintiffs' press that 0.4 of an hour for "Call w/ OC [opposing counsel] and team [co-counsel] re: deposition scheduling" does not require a reduction because "[c]onferences with opposing counsel are not appropriately staffed only by paralegals." But that misses the mark. There is no prohibition against attorneys participating in scheduling calls, but if they so choose, they will be paid less for it. "Clerical work which does not require the skill of an attorney, but which an attorney nevertheless performs, may be compensated at a lesser rate than the attorney's customary hourly rate." *Morrow v. Ingram*, No. 1:70-CV-4716-WJG, 2011 U.S. Dist. LEXIS 27841 at *7-8 (S.D. Miss. Mar. 1, 2011) (citing *Cruz v. Hauck*, 762 F.2d 1230, 1235 (5th Cir. 1985)). "Time spent on such tasks as letters to accompany motions for filing, review of lists and other routine matters should be compensated at the lesser rate as these are clerical duties that could have been handled by non-lawyers." *Id.* at 8. "Work of this nature is generally allowed at the paralegal billing rate." *Id.*

Rather than accepting the plaintiffs' reclassification of 22.5 hours or recalculating each attorney's lodestar in relation to each objection, the Court will follow the State's "across-the-board" recommendation and reduce all plaintiffs' hours expended.

### viii.   "Work On Attorney Fee Application"

Finally, the State challenges the plaintiffs' request for expenses and fees on fees, but "it is well settled that fees-on-fees are recoverable under § 1988." *Volk v. Gonzalez*, 262 F.3d 528, 536

15

(5th Cir. 2001). Plaintiffs' request for fees, including the lodestar requested related to the reply brief ($4,590) is granted.

### ix. Travel Time and Expenses

Under Section 1988, prevailing parties are entitled to compensation for reasonable litigation expenses such as "charges for photocopying, paralegal assistance, travel, and telephone." *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990). "Whether these expenses are reasonable is committed to the sound discretion of the trial judge." *Id.*

The Court hereby finds that plaintiffs' travel rate of 50% of their hourly rate and the revised request for expenses, *see* Docket No. 160 at 17-18, are reasonable. *See Watkins v. Fordice*, 807 F. Supp. 406, 414 (S.D. Miss. 1992).

### D. The *Johnson* Factors

Finally, the Court must consider whether the *Johnson* factors counsel in favor of an upward or downward adjustment. They are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

488 F.2d at 717-19.

"The United States Supreme Court has stated that many of the *Johnson* 'factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.'" *Penthouse Owners*, 2011 WL 6699447, at *3 (quoting *Hensley*, 461 U.S. at 434 n. 9 (1983)).

In this case, each of the *Johnson* factors have been considered in the lodestar analysis. For example, "the results obtained" was discussed at length above, and it would be duplicative to address again. Additionally, the attorneys' experience, reputation, and ability, customary hourly rate, typical fee arrangements, and time limitations and contributions were expressly considered in the lodestar analysis. Thus, in weighing all of these factors, the Court finds that the lodestar should remain as-is.

### IV.   Conclusion

Based on the forgoing reasons, the Court awards plaintiffs' $352,143.20 in fees and $10,777.83 in costs for a total award of $362,921.03. In arriving at this amount the Court applied a downward adjustment of 15% to all plaintiffs' attorneys' proposed hours, to account for proper billing judgment, *e.g.*, lack of clarity as to whether fees were for clerical or legal work, the results achieved, and work spent on non-prevailing issues. *See Saizan v. Delta Concrete Products Co., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006) (reducing award sought by 15%); *see also Walker v. HUD*, 99 F.3d 761, 770 (5th Cir. 1996) (reducing award sought by 15%). Then the Court multiplied those hours by the hourly rate approved by this Court to reach an "adjusted lodestar."

The following table sets forth the Court's fee calculation:

| Attorney or Paralegal | Proposed Hours | Court's Approved Rate | Unadjusted Lodestar | Court's Approved Hours (incorporating -15% adj.) | Adjusted Lodestar |
|---|---|---|---|---|---|
| Ghita Schwarz | 332.6 | $450.00 | $149,670.00 | 226.168 | $127,219.50 |
| Ghita Schwarz - Travel | 46.3 | $225.00 | $10,417.50 | 46.3 | $10,417.50 |
| Alexis Agathocleous | 110.8 | $450.00 | $49,860.00 | 75.344 | $42,381.00 |
| Alexis Agathocleous - Travel | 31.3 | $225.00 | $7,042.50 | 31.3 | $7,042.50 |
| Shayana Kadidal | 51 | $450.00 | $22,950.00 | 34.68 | $19,507.50 |
| Stephanie Llanes | 125.5 | $225.00 | $28,237.50 | 85.34 | $24,001.88 |
| Stephanie Llanes - Travel | 17 | $112.50 | $1,912.50 | 17 | $1,912.50 |
| Claire Dailey | 72.5 | $125.00 | $9,062.50 | 49.3 | $7,703.13 |
| Matthew Strugar | 244.3 | $450.00 | $109,935.00 | 166.124 | $93,444.75 |
| Matthew Strugar - Travel | 44.4 | $225.00 | $9,990.00 | 44.4 | $9,990.00 |
| Rob McDuff | 12.7 | $450.00 | $5,715.00 | 8.636 | $4,857.75 |
| Jake Howard | 11.2 | $385.00 | $4,312.00 | 7.616 | $3,665.20 |
| **Total** | 1099.6 | | $409,104.50 | 792.208 | **$352,143.20** |
| **Costs** | | | | | **$10,777.83** |
| **AWARD TOTAL** | | | | | **$362,921.03** |

**SO ORDERED**, this the 1st day of August, 2022.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE